JACOB WEBBER v. ROSA WEBBER.

*Divorce—Alimony.*

Under Bat. Rev., ch. 37, § 10, a wife is entitled to alimony *pendente lite* when she is a *party* to an action for divorce : *Therefore* where the husband plaintiff alleged adultery, and the wife defendant denied the same and asked for a divorce *a mènsa et thoro* alleging cruel and inhuman treatment, and the Court below granted an order for alimony *pendente lite*; *Held*, not to be error.

(*Wilson* v. *Wilson*, 2 Dev. & Bat. 377; *Thomeguex* v. *Bell*, Martin's Rep. 44; *Crump* v. *Morgan*, 3 Ire. Eq. 91 ; *Taylor* v. *Taylor*, 1 Jones 528, cited, commented on and approved.)

CIVIL ACTION, for Divorce tried at Spring Term, 1878, of EDGECOMBE Superior Court, before *Henry, J.*

The plaintiff alleged that defendant was guilty of adultery, which was denied by the defendant who also alleged that plaintiff was guilty of cruel and inhuman treatment towards her, and upon that ground she demanded judgment for a divorce from bed and board; and thereupon she moved for alimony *pendente lite.* This motion was resisted by plaintiff, for that, the Court had no power under the statute to allow defendant a sum of money for alimony and expenses of the action. His Honor held otherwise, and made an order of reference to the clerk to report a reasonable allowance for the same, from which ruling the plaintiff appealed. (See *Miller* v. *Miller*, 75 N. C., 70.)

*Messrs. Battle & Mordecai*, for plaintiff.
*Mr. Fred Phillips*, for defendant.

RODMAN, J. The only question now before this Court is as to the legality of the order made by the Judge in the Superior Court, requiring the plaintiff to pay $40 per month thereafter to be used by the defendant in paying the expenses of her defence and for her subsistence during the pendency of the action or until otherwise ordered.

The claim of a wife to alimony under the circumstances existing in this case depends on the proper construction of § 38 of ch. 193 of the acts of 1871-'72 (Bat. Rev., ch. 37, § 10). This section says in brief: If any married woman shall apply to a Court for divorce, and set forth in her complaint such facts as if true will entitle her to it, and it shall appear to the Court that she has not sufficient means whereon to subsist during the prosecution of her suit, and to defray the expenses thereof, the Judge may order the husband to pay her such alimony as shall appear to him just and proper, &c. The act applies by its terms only to an action for divorce

brought by the wife, and it is contended by the plaintiff
who is the husband, that the Judge has no right to allow the
wife alimony when he is the plaintiff, and she the defendant.
If the act is limited to its literal construction, of course that
is so, for although the wife has applied for a divorce and has
set forth facts, &c., yet it is in her *answer* and not in her *com-
plaint* as the statute literally taken requires.

In interpreting an act, it is the duty of a Court to ascer-
tain its intent and meaning and for that purpose, says BLACK-
STONE, we must consider the old law, the evil which the act
was intended to remedy, and the remedy. And we may
well give a liberal interpretation to the remedy when other-
wise it would be incomplete and only half accomplish its
purpose. It was supposed under the decision in this Court
in *Wilson* v. *Wilson*, 2 Dev. and Bat. 377, (June, 1837,) that
upon a petition by a wife for divorce, a Court had no power
to give her alimony *pendente lite*. To the legislature this
seemed an evil. By the supposed law of that decision a
wife was practically compelled to live with her husband,
notwithstanding his adultery or cruelty, from the want of
means of prosecuting an action, or of subsisting during its
pendency. A husband is bound to maintain his wife in a
way suited to his means until the marriage is legally dis-
solved, or unless she deserts him without sufficient cause.
But by what was supposed to be the law of that decision,
he might by his own misconduct compel her to leave him,
and thus relieve himself from the duty of maintaining her,
until she could obtain a judgment against him founded on
such misconduct. Accordingly the legislature in 1852 passed
the act found in Rev. Code, ch. 39, § 15, and substantially
re-enacted in the act of 1871-'72, above referred to   It had
happened that in *Wilson* v. *Wilson, supra,* the wife had been
the plaintiff, and it did not occur to the legislature that she
would equally require the means of subsistence while defend-
ing an action brought by her husband against her. The

justice of giving alimony is as apparent in the one case as in the other. In both, she is compelled by the husband to leave his house and is deprived of the support by him to which she is by law entitled during the marriage. Her guilt is not to be presumed merely on his charge; on the contrary, her innocence is presumed. There can be no doubt that if the attention of the legislature had been directed to the possibility that a wife might be a defendant, the act of 1852 would have made the same provision for her as a defendant, as it did for her as a plaintiff. We think we are required to interpret the act as meaning that she may claim alimony *pendente lite*, whenever she is a *party* in an action for divorce. There is a precedent for this interpretation very closely in point. The act of 1756, called the "Book Debt Act," gave to plaintiffs the right to prove book accounts by their own oath, but did not give to defendants a corresponding right to prove a set off. Yet it was held that under a proper interpretation of the act, they had such right. *Thomeguex* v. *Bell*, Martin's Rep. 44, (1794) and to put the question beyond doubt, the act was afterwards amended to embrace defendants.

The argument of the plaintiff against the right of a wife to alimony when she is a defendant, is this:—Before the act of 1852 the wife, even when plaintiff, had no right to alimony *pendente lite*, (and for this he cites *Wilson* v. *Wilson)* and as the act only gave it to her when plaintiff, it impliedly prohibited it to her when a defendant. The conclusion is logical if the premises are correct. It will be seen on examining the case of *Wilson* v. *Wilson*, that GASTON, J. admits that by the practice of the English Ecclesiastical Courts, the wife might apply for alimony as soon as the Court was informed of the fact of marriage; but he says that that usage had not been introduced by statute into the Courts of this State, and consequently did not exist here ; and he puts the refusal of the Court to grant alimony on

the general absence of that power, as one of the grounds of the decision of the Court. But he also puts it on another ground which was incontestable, viz, that the plaintiff's allegations of cruelty were too indefinite to be acted on. To that it is not certain that the general want of power was the controlling reason on which the decision was made; it might have been merely the opinion of the eminent Judge who delivered the opinion of the Court. However this may be, the doctrine that the practice and usages of the English Ecclesiastical Courts do not prevail here in cases not provided for by statute, has been since distinctly contradicted, and the ecclesiastical law of England declared to be a part of the common law, which became in force as soon as jurisdiction in divorce was given to our Courts. In 18—, when the case of *Crump* v. *Morgan*, (3 Ire. Eq. 91) was decided, no statute expressly gave to any Court jurisdiction to declare the nullity of a marriage by reason that one of the parties was a lunatic when the rite was performed. But the Court took jurisdiction upon the ground stated, and RUFFIN, J. said: " The canon and civil law, as administered in the Ecclesiastical Courts in England are parts of the common law, were brought here by our ancestors as such, and have been adopted and used here in all cases to which they were applicable and wherever there has been a tribunal exercising a jurisdiction to call for their use." And in *Taylor* v. *Taylor*, 1 Jones 528, PEARSON, J. speaks of the practice in cases of divorce as "derived from and suggested by the practice of the Ecclesiastical Courts in England." These two *decisions* substantially overthrow, not the decision in *Wilson* v. *Wilson*, but one of the arguments of GASTON, J. in support of it. The practice of the English Ecclesiastical Courts undoubtedly was, as stated by GASTON, J., to listen to an application for alimony *pendente lite*, on proof of the marriage, *and indifferently—whether the wife was plaintiff or*

*defendant.* Shelford Mar. & Div. 533, 586. *Bain* v. *Bain,* 2 Adams Ecclesiastical Rep. 252.

We do not think that we have any jurisdiction to change the *amount* of alimony allowed by the Judge, which depends on his discretion, and may be altered or modified by him at any time. But we think we may not improperly call the attention of His Honor to § 37 of the act of 1871-'72, (Bat. Rev. ch. 37, § 9) and to 2 Bish. Mar. and Div. § 460, as bearing on that subject. Judgment below affirmed. Let this opinion be certified to the end that the case may be proceeded in according to law.

No error.                                           Affirmed.