J. K. P. REEVES v. RETTA REEVES.

*Divorce—Alimony pendente lite—Practice.*

1. A *feme* defendant in an action for divorce, who does not set up a claim upon her part for a divorce, is not entitled to alimony *pendente lite.*

2. An application for alimony *pendente lite* can be made by motion in the cause.

(*Wilson* v. *Wilson*, 2 Dev. & Bat., 377; *Crump* v. *Morgan*, 2 Ired. Eq., 91; *Webber* v. *Webber*, 79 N. C., 572, cited, distinguished and approved.)

CIVIL ACTION for Divorce, tried at Fall Term, 1879, of MONTGOMERY Superior Court, before *Buxton, J.*

The feme defendant in this case applied for alimony *pendente lite,* by a motion in the cause, notice being waived by the plaintiff. The plaintiff moved to dismiss the application, for that, the law authorized the allowance of alimony only in a case where the feme was plaintiff, and if allowed at all here, it must be upon special proceeding commenced by summons. The court refused the plaintiff's motion, and made an order for alimony, from which the plaintiff appealed.

*Mr. J. T. Crocker,* for plaintiff.
*Messrs. McKay, Mauney* and *Hinsdale & Devereux,* for defendant.

ASHE, J. There are but two points presented by the appeal: First, Whether a feme defendant is entitled to alimony *pendente lite,* in a petition for divorce; secondly, Whether an application for such alimony must be made by a special proceeding or by a motion in the cause.

The first act of our legislature on the subject of divorces was the act of 1814, which contains an enumeration of the causes for which a divorce may be had, either from the bonds of matrimony or from bed and board, and provides that in either case when the decree is in favor of the wife upon her petition, the court shall have power to decree her such alimony as her husband's circumstances will admit. The construction put upon this act was, that the wife was only entitled to alimony upon the final hearing of the cause. *Wilson* v. *Wilson,* 2 Dev. & Bat., 377.

Judge GASTON, who delivered the opinion in that case, held, that the usages and customs of the ecclesiastical courts in regard to the subject of divorces had not been adopted in this state. But Chief Justice RUFFIN, in the case of

*Crump* v. *Morgan*, 2 Ired. Eq., 91, which was a bill in equity for divorce from the bonds of matrimony, said, that " it was an entire mistake to say that the common and civil laws as administered in the ecclesiastical courts of England, are not parts of the common law. Justice BLACKSTONE, following LORD HALE, classes them among the unwritten laws of England, as parts of the common law, which by custom are adopted and used in peculiar jurisdictions, 1 Blackstone Com., 79; Hale's .Hist. Com. Law, 27, 32. They were brought here by our ancestors, as parts of the common law, and have been adopted and used here in all cases to which they were applicable, and wherever there has been a tribunal exercising a jurisdiction calling for their use. They govern testamentary causes and matrimonial causes. Probate and reprobate of wills stand upon the same ground here as in England, unless so far as statutes may have altered it." If the ecclesiastical law, unaltered by statute, is in force here as a part of the common law, there would be no doubt of the power of the court to decree alimony *pendente lite* to the feme defendant in this case, for that law not only allowed alimony *pendente lite*, but allowed it to the wife whether she was plaintiff or defendant. 2 Bishop, 384; Shelford on Marriage and Divorce, 33, 586.

When two such eminent jurists as Chief Justice RUFFIN and Judge GASTON differ upon a legal question, it is difficult to decide, and might be considered presumption in any court to overrule the opinion of either, deliberately expressed. But we think a solution of the difficulty may be reached without risking such an imputation. Judge GASTON's opinion in the case of *Wilson* v. *Wilson, supra*, was regarded as law at the time it was delivered, and recognized by the legislature as such, when in 1852, in consequence of that opinion they declared, that " if any married woman shall apply to a court for a divorce from the bonds of matrimony or from bed and board with her husband, and shall

set forth in her complaint such facts as, if true, will entitle her to the relief demanded, and it shall appear to the judge of such court, either in or out of term by the affidavit of complainant or other proof, that she has not sufficient means whereon to subsist during the prosecution of the suit, and to defray the proper and necessary expenses thereof, the judge may order the husband to pay her such alimony during the pendency of the suit as shall appear to him just and proper, having regard to the circumstances of the parties and such order may be modified or vacated at any time, on; the application of either party or of any one interested." * * * But admitting the ecclesiastical law as a part of the common law to be in force in this state, the legislature has seen proper to regulate the law and practice on the subject of divorces, by declaring in what cases they may be had and the mode of proceeding to obtain them, and who entitled to the benefit of its provisions. And while the act of 1852 was partly declaratory of the common law, it was in one sense a restrictive statute. It *only* gave alimony to the wife, *pendente lite*, when she was the petitioner in a proceeding for divorce, and impliedly repealed the doctrine of the common law which gave the courts the power to allot it to her when she was a defendant, by force of the legal maxim, *expressum facit cessare tacitum*. Broom's Legal Maxims, 285.

The defendant's counsel relied upon the authority of the case of *Webber* v. *Webber*, 79 N. C., 572. But that case is distinguishable from ours, and is no authority for the right claimed by the defendant. There, the wife who was defendant set up in her answer a claim to be divorced from the bed and board with her husband.

There is nothing in the other exception that the application is not made by a special proceeding. It is expressly provided in the act of 1852, re-enacted by the act of 1871–'72, Bat Rev., ch. 37, § 10, that the judge before whom the suit is pending may order alimony to be paid upon the affi-

davit of the complainant. The provision for *special proceedings* is found in section eleven of chapter 37 of Battle's Revisal, and only applies to independent suits for alimony. There is error. Let this be certified to the superior court of Montgomery county.

Error.　　　　　　　　　　　　　．　Reversed.