### BERRY MEDLIN v. IDA MEDLIN.

(Filed 8 May, 1918.)

**1. Divorce—Alimony—Judgment—Cross Bill—Estoppel—Statutes.**

A denial of alimony in an independent action brought by the wife under section 1567 of the Revisal, on the ground that her husband maliciously turned her out of doors, will conclude her upon her cross-bill setting up the same matter in an action thereafter brought by her husband against her for divorce *a vinculo.*

**2. Same.**

The ground for divorce *a mensa* given the wife (Revisal, sec. 1562, subsec. 2) because of being maliciously turned out of doors by her husband is but an instance of wrongful abandonment provided by subsection 1 thereof, and the basic facts of these two suits being the same, an authoritative decision on the right of alimony will conclude the parties as to such right and as to the relevant facts existent at the time and involved in the inquiry.

34—175

3. Divorce—Statutes—Common Law—Expense Money—Allowance· to Wife —Costs—Courts—Remedies.

Our statute allowing, in given instances, alimony to the wife is remedial in its nature, affirmative in its terms, and cumulative in its effect, and does not conflict with or abrogate the common law existent on the subject or withdraw from the court any powers already possessed by them in administering its principles; and hence the court in its sound discretion may allow a reasonable amount to the wife to enable her to properly present her defense to an action brought against her by her husband for divorce *a vinculo*, though she may be concluded by judgment against her in her former and independent action for divorce *a mensa* under the provisions of the statute, Revisal, sec. 1567. The history of this principle discussed by HOKE, J. *Wilson v. Wilson*, 19 N. C., 377; *Reeves v. Reeves*, 82 N. C., 348, cited and overruled on this point.

ACTION, heard on motion by *feme* defendant for an allowance of alimony and of $150 expense money, before *Harding, J.,* at Spring Term, 1918, of UNION.

The principal action is for divorce *a vinculo* brought by the husband against the wife on account of her alleged adultery.

Defendant answers and, under oath, denied the alleged adultery and also filed a cross-bill for divorce from bed and board on the alleged ground that plaintiff had maliciously turned her out of doors.

It appeared further that some time prior to the institution of the present suit the *feme* defendant had instituted an independent suit for alimony for her support under section 1567 of Revisal, alleging a wrongful abandonment by her husband. On issue joined in that suit there was verdict for the husband on the question of wrongful abandonment and judgment denying alimony as prayed for.

On the present hearing his Honor was of opinion, and so ruled, that no alimony for support could be allowed by reason of the verdict and judgment in the former suit involving the same state of facts as those relied upon in defendant's cross-bill, but on affidavits duly filed, the court found as pertinent facts "That defendant has denied, under oath, the adultery charged against her in the complaint; that such (her denial) is made in good faith; that defendant is unable financially to employ counsel or to bring to the court the witnesses necessary for her proper defense; that plaintiff, her husband, is solvent and amply able to pay the sum of $150, and that said sum is a reasonable allowance for the purpose," and thereupon adjudged that plaintiff pay to the defendant the said sum of $150 expense money to enable her to defend the suit, from which judgment plaintiff, having duly excepted, appealed.

*Maness, Armfield & Vann for plaintiff.*
*Stack & Parker for defendant.*

HOKE, J., after stating the case: Under recognized principles, we must approve his Honor's ruling that no alimony can be allowed the defendant as an incident to her cross-bill, on application for divorce from bed and board, because of her being maliciously turned out of doors, and for the reason given by him that in a separate and independent action for alimony under section 1567 of Revisal, the facts involved in her present bill have been determined against the defendant and judgment entered denying her alimony for support.

It is understood with us that a suit for divorce because of being maliciously turned out of doors, under subsection 2, section 1562, of Revisal, is but an instance of a wrongful abandonment provided for in subsection 1 of the statute, and the basic facts of these two suits being the same, the accepted principle is that an authoritative decision on the right of alimony will conclude the parties as to such right and as to the essential relevant facts existent at the time and involved in the inquiry. First Ruling Case Law, title, Alimony, sec. 87, p. 940, and cases cited.

We concur also in his Honor's decision awarding to defendant $150 expense money as an incident to the husband's suit against her for divorce on account of her alleged adultery, the defendant having formally denied the same under oath, and, on the facts found by his Honor, "That defendant's denial and her desire to defend the suit are in good faith; that she is unable by reason of her poverty to prepare and present her defense; that her husband is able to furnish the same, and that the sum awarded is reasonable for the purpose."

On these facts and under the rulings and precedents of the ecclesiastical courts in England having jurisdiction in matters of divorce and questions appertaining thereto, an award of a reasonable amount to enable the wife to properly present her defense was allowable in the sound discretion of the court, there usually as a part of the costs and very much on the principle that alimony for support was given. *D'Aguilar v. D'Aguilar,* 3 Eng. Ecclesiastical Reports, pp. 329-338.

And these rulings and precedents, as a constituent part of the common law, were transported to the English-speaking colonies of this country and allowed to prevail here afterwards as the basis of our State jurisprudence to the extent that its principles were "not inconsistent with the genius of a free people," except when abrogated or modified by constitutional or express statutory provision. And so considered, and as approved and applied by authoritative decisions here and elsewhere, they are in full support of his Honor's ruling. *Webber v. Webber,* 79 N. C., 572; *Crump v. Morgan,* 38 N. C., 91; *Methoen v. Methoen,* 15 Ga., 97 (reported in 60 Am. Dec., 664); *Van Gorder v. Van Gorder,* 54 Cal., 57 (reported also in 44 L. R. A. (N. S.), 998); 1 Ruling Case

Law, p. 910, title, Alimony, sec. 57; Bishop on Marriage and Divorce, sec. 976; 1 Enc. Pl. & Pr., 541; 14 Cyc., 767.

In the citation to 1 Enc. Pl. & Pr., *supra,* it is said: "That suit money and counsel fees are awarded on the same principles as those which govern the granting of alimony *pendente lite,* and so it has been universally held by the English courts as well as by most of those in this country that this allowance to the wife is a common-law right and grantable without statutory aid."

And that from Bishop, *supra:* "Natural justice and the policy of the law alike demand that in any litigation between the husband and the wife they shall have equal facilities for presenting their case before the tribunal. This requires that they shall have equal command of funds, so that if she is without means, the law having tested the acquisitions of the two in him, he shall be compelled to furnish them to her to an extent rendering her his equal in the suit. This doctrine is a part of the same whence proceeds temporary alimony. And so the English courts have from the earliest times to the present held without the aid of an act of Parliament, and nearly all of our own have accepted the doctrine as of common law."

True, it was at one time held in this State (*Wilson v. Wilson,* 19 N. C., 588) that the precedents of the ecclesiastical courts did not obtain here as to the right to award alimony in divorce proceedings cognizable before them, and that such alimony could only be allowed by express legislative sanction, but this as a general proposition was ruled to the contrary in *Morgan v. Crump,* 38 N. C., *supra,* and, as to the right to alimony *pendente lite,* was directly disapproved in the later case of *Webber v. Webber,* heretofore cited.

We are not inadvertent to the case of *Reeves v. Reeves,* 82 N. C., 348, in which it was held that the matter of awarding alimony *pendente lite* and expense money is entirely controlled by statute, and that the power is only conferred by the law where the suit is by the wife and does not extend to a case like the present, wherein the allowance must be made, if at all, as an incident of the husband's suit against her. But, with full recognition of the ability and learning of the Court when that ruling was made and of the eminent judge who wrote the opinion, we are unable to concur in their view and are constrained to hold that the case of *Reeves v. Reeves,* in the respect suggested, was not well decided.

In *Webber v. Webber, supra,* very clear intimation is given that the statute itself, by correct interpretation, should be extended to cover all cases where the wife was a *party* to a divorce proceedings, whether as plaintiff or defendant; but apart from this the statute, being remedial in its nature and affirmative in terms, gives no indication that it was intended to abrogate the common law existent on the subject or to with-

draw from the court any powers already possessed by them in administering its principles. In such case, if there were repugnancy between the two, the repeal would only operate to the extent of the interference, but there is no repugnancy between them and nothing to show that the remedies provided by one are not cumulative or declaratory of those afforded by the other. *Waddell v. Masten,* 172 N. C., 582-586, citing *Humphrey v. Wade,* 70 N. C., 280; *Oliveira v. University,* 62 N. C., 69; *McKay v. Woodle,* 28 N. C., 352; *Davies v. Fairbairn,* 44 U. S., 636; *Rosin v. Lidgerwood,* 86 N. Y. Supp., 49; Endlich on Statutes, secs. 204 and 205; 36 Cyc., 1145 and 1175.

While divorce *a vinculo* was not originally awarded by the ecclesiastical courts for causes transpiring subsequent to a valid marriage, the reason upon which the power was made to rest and the principle of public policy involved in its exercise are present wherever jurisdiction to grant a divorce is conferred. Even in *Wilson v. Wilson, supra,* in which the principles of the common law permitting an award of alimony *pendente lite* was denied, the great and humane judge who delivered the opinion, conscious that the decision might at times operate with harshness against an innocent and helpless defendant, felt constrained to express himself further on the subject as follows: "We are not called on to say whether there may not be cases in which the husband is an applicant for a divorce and is endeavoring to stigmatize his wife with foul imputation where the court may withhold its aid from him unless he will furnish the means of a fair investigation."

In our opinion, both right, reason and approved precedent are in support of his Honor's ruling, and on the facts as found by him the judgment is

Affirmed.