UNION COMPRESS & WAREHOUSE COMPANY. *v.* EASON.

4-4631

Opinion delivered April 26, 1937.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.

*W. S. Atkins* and *E. F. McFaddin,* for appellee.

McHANEY, J. On and prior to July 12, 1935, appellee was, and had been for many years, in the employ of appellant as night watchman at its compress and warehouse in the city of Hope, Arkansas. He went on duty daily at 5 p. m., and off duty at 5:30 a. m. His job, as its name implies and as the evidence shows, was to watch, guard or police the plant to protect it from fire, theft and from intruders, and, incidental thereto, he was required to carry a clock and punch same with the 29 keys distributed throughout the four sheds, making the rounds every thirty minutes which required him to walk about seventeen miles each night. On the night of July 12, 1935, about midnight appellee was assaulted, robbed of $17 and painfully injured by a negro employee of appellant, one Ernest Douglas, who was not on duty for appellant for any purpose after 5 p. m., of said date, but worked only in the day time. Appellee had seen Douglas prowling around the plant at night and had complained to appellant's superintendent regarding this negro. Complaint was, also, made that the doors to the plant should be kept locked and instructions had been given to other employees

to do so, but on the night in question some of them had been left open. Appellee brought suit against appellant to recover damages for the injuries sustained in the assault. Negligence was charged in failing to furnish him a reasonably safe place in which to work; to provide him with fellow-servants with whom to work who would not be guilty of negligence and who would not deliberately and intentionally injure him; to reasonably light the premises; and to keep the doors locked to keep out trespassers. Issue was joined and a trial resulted in a verdict and judgment for appellee in the sum of $2,999.

But one point is argued on this appeal for a reversal of the judgment, and that is, that the trial court should have directed a verdict for appellant at its request, and erred in refusing to do so. We agree with appellant in this contention.

It is contended for appellee that appellant failed to exercise ordinary care to furnish him a reasonably safe place in which to work. Such is the duty imposed by law on the master, but the evidence in this case fails to disclose any breach of such duty. Appellee was not injured by reason of any defective condition in the premises themselves, such as a hole in the floor or an obstruction in his pathway. The place in which he worked, so far as this record discloses, was perfectly safe in and of itself and just as it had been for many years. Nor can it be said that failure of the employee whose duty it was to lock the doors in the east side of shed No. 3, where the assault occurred, rendered the place in which to work unsafe of itself. There is no danger to an employee from an open door. The mere fact that the door was negligently left open was not a hazard to appellee in making his rounds of the plant, nor was he injured by reason of the door. Moreover, the open doors were plainly observable to appellee. His duties as watchman were more than merely to make his rounds and punch the clock. If the doors were left open and he considered it unsafe for himself or the property he was guarding, it would have been a simple thing for him to have closed and locked them, and such was his duty by reason of the inherent

nature of the job. He was a guard, policing the property at night. The interest of his employer and self-preservation required him to do those things he considered necessary or proper to protect the interests of both. Chains and locks were provided and were at hand to securely fasten the doors against trespassers. Nor can the action be sustained because appellant failed to discharge Douglas on appellee's complaint and request so to do. Had the assault occurred while Douglas was on duty in appellant's service and after warning was given of his dangerous character, a different situation would be presented. But this did not happen. Douglas was not on duty at the time and who can say that the same thing would not have occurred had he been discharged, at appellee's suggestion.

A strikingly similar situation existed in *Fraser* v. *C., R. I. & P. Ry. Co.*, 101 Kans. 122, 165 Pac. 831, L. R. A. 1917A, 749. In that case plaintiff, a night watchman, guarding the defendant's warehouse, was shot by a trespasser who escaped through an open door. Negligence was alleged in failing to keep the doors locked. Plaintiff failed to recover and appealed. The Supreme Court of Kansas said: "There was no dispute to be settled by the jury that the first thing for the watchman to do when he came on duty was to see that the doors were secured. A watchman of ordinary capacity might be expected to understand this fact without instruction." The court further said: "The omission of the doorman to bolt the closed door, and the shooting of the plaintiff, did not bear to each other the relation of cause and effect. Omission to bolt the door was fraught with no peril to the plaintiff, active or latent. Bolted or unbolted, the door was not a hazard which plaintiff encountered in his rounds, and omission to bolt it neither supplied nor set in action any dangerous instrumentality or agency. It merely created a condition which made entrance to the building less difficult than it otherwise would have been, should any one desire to enter. The injury resulted from the violent and malicious act of a desperate person who took advantage of the condition to

enter the building for some purpose not disclosed. He may have gone there to steal. When surprised, he exhibited such conduct as he willed, shot the plaintiff, and fled, but conduct which originated with him, and which did not originate with the doorman or the door the evening before.

"The plaintiff cites the well-known authorities to the effect that, if the action of an intervening cause might have been anticipated, the intervening cause will not interrupt the connection between the original cause and the injury. The rule is sound, but it presupposes an original cause of injury which manifests consequences in an injurious result. We all anticipate pocket picking when the circus comes, and housebreaking during fair week; but the circus and the fair are not the causes of such crimes. We know, too, that should a housebreaker be discovered in the act of committing burglary, he might do violence to a person interrupting his depredation. But if, knowing the city to be infested with such characters, we go out for the evening leaving the back door unlocked and leaving a servant in the house, omission to lock the door is not the cause of the burglary, should one occur, or the cause of injury to the servant who tries to intercept commission of the crime. The cause of the injury originates with the burglar, whose entrance into the house was not obstructed by a locked door. On the other hand, when an act or omission has bound up in it perils which, in the natural order of things, are liberated or eventuate through the conduct of a responsible human being, which might have been anticipated, and injury results, the original act or omission is proximate cause. Potency to do harm was contained in the act or omission from the beginning, continued to threaten throughout the chain of events, and came to fruition in the ultimate injury, albeit the ultimate injury was promoted or precipitated through the agency of an intervening third person."

See, also, *Carter* v. *Atlantic Coast Line R. R. Co.*, 109 S. C. 119, 95 S. E. 357, 11 A. L. R. 1411, where it is said: "Certainly, the want of light did not directly cause or contribute to the injury. There was no causal

connection whatever between the two events. That kind of an injury was neither a natural nor a probable consequence which might reasonably have been expected to result from the failure to keep all the lights burning. The want of light was merely a condition which might or might not have influenced the intervening independent act of the robber, over whom defendant had no control.''

So, in this case, appellee's injuries were the result of an independent criminal act on the part of the negro, Douglas, over which appellant had no control and for which it cannot be held liable, as there is no causal connection between the negligence laid and the criminal act.

The trial court, therefore, erred in refusing to direct a verdict for appellant. The judgment will be reversed, and the cause dismissed.