WILLIAM HENRY OLIVER v. FLORENCE BOLAND OLIVER.

(Filed 19 March, 1941.)

1. **Divorce § 11—**

The right to alimony *pendente lite*, both under statute, C. S., 1666, and under the common law, is predicated upon the justice of affording the wife sufficient means to cope with her husband in presenting their case before the court, and a finding, supported by evidence, that the wife has earnings and means of support equal to that of her husband, sustains the court's order denying her motion for alimony *pendente lite*.

2. **Divorce § 2a—**

In order to be entitled to a divorce on the ground of separation, plaintiff must show the fact of marriage, that the parties have lived separate and apart for two years, and that plaintiff has been a resident of the State for one year. Ch. 72, Public Laws of 1931, as amended by ch. 163, Public Laws of 1933; as amended by ch. 100, Public Laws of 1937.

3. **Same—Conflicting evidence as to separation by agreement held to take issue to the jury.**

A separation, as contemplated by the divorce statute, is more than a mere abandonment, and means a cessation of cohabitation of husband and wife by mutual agreement, but evidence on the part of the husband that he and defendant separated by mutual agreement, including the admission in evidence of a letter written by her to him agreeing to a separation without divorce, *is held* sufficient to take the issue to the jury notwithstanding evidence on her part that there was no agreement to separate but that he abandoned her.

4. **Divorce § 4—Charge that leaving State with intention of returning at expiration of reasonably definite time would not interrupt residence here, held without error.**

Plaintiff's evidence tended to show that he made his residence in this State, that after a physical breakdown his doctor advised him to go to Florida, that he went to Florida for the winter months, that he intended to and did return to this State after the end of the severe weather. *Held:* An instruction to the effect that if plaintiff had satisfied the jury by the greater weight of the evidence that he left the State with the intention of returning here at the expiration of a reasonably definite time, always regarding North Carolina as his place of residence, his physical absence from the State for such reasonably definite period of time would not affect his legal residence, *is held* without error.

5. **Trial § 37—**

Issues submitted will be held sufficient if they present to the jury proper inquiries as to all determinative facts in dispute, and afford the parties opportunity to introduce all pertinent evidence and to apply it fairly.

**6. Divorce § 2a—Where plaintiff alleges, and case is tried upon theory of separation by consent, refusal to submit issue of abandonment is not error.**

In an action for divorce on the ground of two years separation in which plaintiff alleges that he and defendant separated through no fault of plaintiff, and the case is tried upon the theory of separation by mutual consent upon defendant's defense that plaintiff abandoned her, an issue as to whether plaintiff and defendant separated as alleged in the complaint and lived separate and apart for two years next preceding the institution of the action, presents all determinative facts in dispute in regard to the separation, and defendant's objection to the action of the court in failing to submit another issue as to whether plaintiff abandoned defendant, cannot be sustained.

APPEAL by defendant from *Bobbitt, J.,* at December Term, 1940, of TRANSYLVANIA.

Civil action instituted 22 May, 1940, for absolute divorce upon ground of two years separation. Public Laws 1931, chapter 72, as amended by Public Laws 1933, chapter 163, as amended by Public Laws 1937, chapter 100.

Plaintiff in his complaint alleges: (1) That he and defendant were married at Hartwell, Ohio, on 15 June, 1910; (2) that he and she separated in June, 1936, through no fault of his, and have since lived separate and apart, that is, for more than two successive years next preceding institution of this action; (3) that he is and for more than one year next preceding the bringing of this action has been a resident of the State of North Carolina, and (4) defendant is a resident of Tennessee.

Defendant in answer filed admits the fact of marriage as alleged but denies all other allegations of the complaint, and further avers that plaintiff having deserted and separated himself from her without provocation, excuse or justification, or any fault on her part, and against her will, and having willfully abandoned her without providing adequate support, is not the injured party.

Defendant moved for order allowing alimony *pendente lite* and counsel fees. Upon such motion the court, "finding as a fact that the defendant is not without sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary and proper expenses thereto, but is receiving the sum of $20.13 disability benefits from an insurance policy of plaintiff, and is earning approximately $120.00 as a civil service employee, and has equal, if not greater, means of support than the plaintiff and is not entitled to an order for alimony *pendente lite,*" denied the motion. Exception.

Upon the trial in Superior Court plaintiff offered evidence tending to show substantially these facts: That he and defendant were married in

the year 1910 as alleged in the complaint; that he suffered financial reverses in 1924; that in the latter part of 1930 he had a physical break-down and his health failed, requiring hospitalization at Veterans' Hospital in Illinois; that afterward he lived in Ohio, at Dayton, then in Cincinnati and again in Dayton; that while in Dayton he and his wife had discussion about their marital affairs, and both agreed that they were incompatible and ill-mated and could not get along together; that in May, 1936, he left Dayton and came to Penrose in Transylvania County, North Carolina, in search of health; that when he left his wife bade him a friendly good-by at the bus station and he told her where he was going; that his wife, who had been working for several years prior to his financial reverses and had been working since that time, continued to work in Dayton; that in June, 1936, his wife, "at her own invitation," came to visit him and they spent their twenty-fifth anniversary together; that he next saw her in Dayton, Ohio, the latter part of December, 1936, while en route north to visit his sister and to attend an art school in Philadelphia; that when he went to Dayton on this trip he and she discussed their differences  .  .  .  he testifying that "we agreed that we belonged to two different schools of thought, the defendant a Catholic and I a Protestant. We came to a very definite understanding that we would live apart because we were ill-mated and incompatible. We had not lived together as man and wife and had occupied different beds for years prior to 1936. There was no change in that respect between June, 1936, and December, 1936"; that in early part of 1937 he attended an art school in Philadelphia; that while there on 13 April, he wrote his wife that he expected to go by bus the first week in June via Dayton on his return to Penrose for the purpose of discussing their "affairs in life" which he believes, she must agree, should "take on a definite understanding, instead of permitting them to drift on and on, as they have been doing"; that he had "decided after mature deliberation that it is best for us to live apart"; that on 1 May, 1937, his wife replied that she thought his idea of a friendly separation a very sensible one and that she would consent to such a separation without a divorce, and in closing stated, "As to your coming to Dayton on your way to Penrose, I would much prefer that you do not do so. Anything we have to say to each other can better be said by mail. I knew when I said good-by to you at Christmas time that it was a final good-by. Our parting was friendly and not sad and I would like to keep that in mind as our good-by"; that when school closed in May, 1937, he returned to Brevard and lived there; that in May, 1939, he suffered a stroke of paralysis and was taken to Veterans' Administration Hospital at Oteen, North Carolina; that over his protest his wife came there; that in September, 1939, after he left the hospital he sold his home in Brevard, for which he was paying in

monthly installments, and upon advice of "his ward surgeon" went to Florida for the winter for his health; that, after cold weather had ended in the spring, he went from Florida to Charleston, South Carolina, for several weeks, then to Columbia, South Carolina, for a few days, then to Weaverville, North Carolina, for a visit, then to the Y. M. C. A. in Asheville in June, 1940, and then back to Brevard in July, 1940; that when he came to Transylvania County, North Carolina, in 1936, he intended and decided to become a resident of that county; that when he went to Philadelphia in 1937 he intended to return to North Carolina, and did return and bought a home in Brevard after that time; that he registered and voted in Transylvania County in the general election in 1938; that when he went to Florida in 1939, it was for his health and upon advise of his ward surgeon; that he intended to stay only for the winter and intended, and did, return to Transylvania County.

Defendant offered evidence tending to show that she never agreed to a severance of marital relations; that there was no discussion about that either in Penrose in June, 1936, when they had "a very happy vacation together," or when plaintiff visited her for a week or so at Dayton in December, 1936; that plaintiff wrote to her almost daily while he was visiting his sister and after he went to the art school in Philadelphia, many of the letters being offered in evidence; that while his letter of 13 April, 1937, surprised and shocked her, she admits writing him the letter of 1 May, 1937; that the next time she saw him was in 1939, when on being informed by Mr. Moore of Brevard that plaintiff had suffered a stroke, she came down "over his protest and in spite of it." Defendant testified: "It was against my principles, but I agreed for him to leave me in 1936. I consented in 1937 to let him live separate from me; I had no choice in the matter."

Further evidence was introduced on the part of the plaintiff tending to show that the separation was by mutual agreement. On the other hand, much evidence was introduced by defendant tending to show that there was no mutual agreement to separate, and that in her letter of 1 May, 1937, she consented to separation only, without divorce. Likewise, much testimony was introduced with respect to the war insurance policies, payment of part of premiums by defendant and the assignment to her of part of the benefits.

At the close of evidence the court in its discretion permitted plaintiff to amend his complaint to allege the separation took place in December, 1936, rather than in June, 1936, so as to conform to the evidence. Exception.

These issues were submitted to and answered by the jury:

"1. Were the plaintiff and the defendant married to each other, as alleged in the complaint? Answer: 'Yes' (by consent).

"2. Has the plaintiff been a resident of the State of North Carolina for one year next preceding the filing of the complaint? Answer: 'Yes.'

"3. Did the plaintiff and the defendant separate, as alleged in the complaint, as amended, and have they lived separate and apart from each other for a period of two years next preceding the institution of this action and the filing of the complaint? Answer: 'Yes.' "

A fourth issue, reading: "Did the plaintiff willfully abandon the defendant, his wife, without providing adequate support for her, as alleged in the answer?" was presented and appeared on the sheet containing the other issues, but was not submitted to the jury. Exception by defendant.

From judgment on verdict defendant appeals to Supreme Court and assigns error.

*Ralph H. Ramsey, Jr., for plaintiff, appellee.*
*James E. Rector for defendant, appellant.*

WINBORNE, J. The assignments of error principally relied upon by defendant are these: Did the court err: (1) In refusing motion of defendant for alimony *pendente lite* and counsel fees? (2) In overruling her motions, aptly made, for judgment as in case of nonsuit? (3) In charging the jury with respect to residence of plaintiff; and (4) in withdrawing the fourth issue from consideration by the jury. Our views relative to these questions are in accord with those of the court below.

(1) Upon the finding of fact with regard thereto, we find no error in the ruling of the judge below in denying motion of defendant for alimony *pendente lite* and counsel fees. Whether proceeding under the provisions of C. S., 1666, or at common law, the right to an allowance either for support pending the action or for expenses of the action, is predicated upon a finding that the wife is without sufficient means to cope with her husband in presenting their case before the court. C. S., 1666; *Medlin v. Medlin,* 175 N. C., 529, 95 S. E., 857; *Holloway v. Holloway,* 214 N. C., 662, 200 S. E., 436.

(2 and 3) The second and third questions may be properly considered together. The statute under which this action is prosecuted provides that: "Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony on the application of either party, if and when the husband and wife have lived separate and apart for two years, and the plaintiff in the suit for divorce has resided in the State for a period of one year." Public Laws 1937, chapter 100, amending Public Laws 1933, chapter 163, which amended Public Laws 1931, chapter 72. See *Brown v. Brown,* 213 N. C., 347, 193 S. E., 409.

In order to maintain an action for divorce under this statute, these facts must exist: (1) Marriage; (2) the husband and wife must have lived separate and apart for two years; and (3) the plaintiff, husband or wife, must have resided in the State of North Carolina for a period of one year. In the case in hand the first factor, the fact of marriage, is admitted. As to the second, "The word 'separation' as applied to the legal status of a husband and wife means more than 'abandonment'; it means 'a cessation of cohabitation of husband and wife, by mutual agreement.'" *Parker v. Parker,* 210 N. C., 264, 186 S. E., 346; *Lee v. Lee,* 182 N. C., 61, 108 S. E., 352; Black's Law Dictionary, Third Edition.

When considered in the light of this definition of separation, the evidence in this aspect of the present case, though controverted, is abundantly sufficient to take the case to the jury.

As to the third factor, defendant contends that the clause "the plaintiff . . . has resided in the State for a period of a year" means actual, physical presence in the State for that period of time. She, therefore, challenges the correctness of the law as declared by the court below, and applied to the evidence in the case. While the exceptions relate to several portions of the charge, the following portion covered by Exception 6 is typical: "Now, Gentlemen of the Jury, the court instructs you as a matter of law that when a person actually ceases to dwell within a State for an uncertain period of time without any definite intention of returning, then his leaving the State under such circumstances makes him a nonresident of the State, although there may be a vague intention to return at some indefinite future time.

"On the other hand, Gentlemen of the Jury, if a man or resident of North Carolina, who leaves the State for a temporary purpose and for a reasonable definite length of time, with the fixed intention of returning to North Carolina immediately at the end of that fixed period of time, rather than some indefinite idea of returning at some indefinite future time, then the court instructs you that that would not interrupt his residence in North Carolina; so that with reference to the evidence in this case the court instructs you that if the plaintiff has satisfied you from the evidence and by its greater weight that the plaintiff left Brevard, Transylvania County, North Carolina, or left North Carolina in October, 1939, having been up to that time and being then a resident of North Carolina, for Florida under the advice of a physician for the definite purpose of staying there during the winter months, and with a definite idea of returning to North Carolina immediately upon the passing of the severe months here in Western North Carolina, and that at all times during his temporary absence from the State of North Carolina in the State of Florida had the fixed intention of returning to North Carolina

under those circumstances, and always regarding North Carolina as his place of residence or home in Western North Carolina, the court instructs you that the plaintiff, under those facts, if you find those to be the facts from the evidence and by its greater weight, was a resident of the State of North Carolina during the period of his physical absence therefrom, during the time from October, 1939, up to 1940, and his residence in North Carolina under those facts, if you find those to be the facts from the evidence and by its greater weight, would not interrupt his previously established residence, if you find he did have a previous established residence, and so find from the evidence and by its greater weight."

Exception, directed to the second paragraph of the quoted charge, is not well taken. See *Moore v. Moore,* 130 N. C., 333, 41 S. E., 943.

(4) Issues submitted are sufficient when they present to the jury proper inquiries as to all determinative facts in dispute, and afford the parties opportunity to introduce all pertinent evidence and to apply it fairly. *Hill v. Young,* 217 N. C., 114, 6 S. E. (2d), 830; *Saieed v. Abeyounis,* 217 N. C., 644, 9 S. E. (2d), 399. When thus tested, the issues submitted in the present case meet all the requirements. While in the complaint it is alleged that plaintiff and defendant separated "through no fault of plaintiff," and while in the answer it is averred that plaintiff willfully abandoned defendant without providing adequate support for her, the case was tried upon the theory advanced by plaintiff that their separation was by mutual consent. In any event, the third issue, predicated upon the allegation in the complaint as above stated, is sufficient to present to the jury the proper inquiry as to the facts surrounding the separation, and to afford defendant opportunity to introduce all pertinent evidence in support of her contention that plaintiff had willfully abandoned her without providing adequate support, as alleged by her, and to apply the evidence fairly. The affirmative answer to that issue negatives the averment of defendant, and renders harmless any error that may have been committed in not submitting the fourth issue. Moreover, defendant does not deny her consent to a separation, but contends that her consent was to a separation, without divorce.

Other exceptions have been considered and are found to be without merit.

In the judgment below there is

No error.