Battle, J.
 

 This canse comes before ns upon the appeal of the defendant from an interlocutory order made in the Court below, allowing alimony to the plainti
 
 *£. pendente lite.
 
 Prior to the year 1852, such an order was not allowable, as this Court had decided some time before in the case of
 
 Wilson
 
 v. Wilson, 2 Dev. and Bat. Rep. 377; but the legislature, in that year, passed an act that authorised the courts, upon a petition for divorce and alimony, to decree the petitioner a sum sufficient for her support during the pendency of the suit. In the act there was no express grant of the right of appeal from such decree, and the court held in
 
 Earp
 
 v.
 
 Eanp,
 
 1 Jones’ Equity Rep. 118, that none was intended, and, therefore, none could be allowed. This decision, no doubt, caused the legislature of 1854, in passing the Eev. Code, to make the following provision in the 15th section of the 39th chapter : “In petitions for divorce and alimony, or for alimony, where the matter, set forth in such petition, shall be sufficient to entitle the petitioner to a decree for alimony, the court may, in its discretion, at any time pending the suit, decree such reasonable alimony for the support and sustenance of the petitioner and her family as shall seem just under all the circumstances of the case. And from such an interlocutory decree, there may be an appeal to the Supreme Court, but that Court shall re-examine only the sufficiency of the petition to entitle the petitioner to relief.” From this, it appears that the Judge may, in the Court below, receive affidavits, in order that he may determine correctly what is, “ under all the circumstances of the case,” a just and proper allowance for the petitioner and her family. But it is manifest from the last clause of the section, that upon an appeal, the power of. the Supreme Court is more restricted. We can re-examine only “ the sufficiency of the
 
 *207
 
 petition to entitle the petitioner to relief” — that is, to determine whether, supposing all the allegations of the petition to be admitted, or to be proved to be true, the Court would be authorised to grant the relief sought. A petition is filed for the purpose of obtaining a divorce
 
 a mensa et
 
 thoro, and also for alimony, under the 3rd section of the 39th chapter of the Rev. Code, and our duty is confined to the enquiry whether the petitioner has set forth in her petition sufficient causes of complaint to entitle her to relief. Now, the 5th section of the' same chapter, requires that these causes shall be set forth “particularly and specially,” which means that the charges contained in the petition “ ought to be in legal language, and to be articulate and certain as to acts, persons, times and places.” See
 
 Whittington
 
 v. Whittington, 2 Dev. and Bat. Rep. 64.
 

 The third section of the act referred to, specifies several distinct causes for a partial divorce: “If a husband shall abandon his family or maliciously turn his wife out of doors, or by cruel and barbarous treatment endanger her life, or offer such indignities to her person as to render her condition intolerable, or her life burdensome,” the Court may grant her a divorce
 
 a mensa et
 
 thoro, and may allow her suitable alimony. The enquiry then, is, whether the petition sufficiently charges such facts and circumstances as will bring her case within the meaning of either clause of the act. She does not pretend that her husband abandoned his family, or maliciously turned her out of doors, so that if she has alleged any cause for relief, it must be that he has, by cruel and barbarous treatment, endangered her life, or that he has offered such indignities to her person as to render her condition intolerable, or her life burdensome.
 

 Before proceeding to the examination of the allegations of the petition, with a view to see whether they sufficiently charge either barbarous treatment of the wife, or indignity to her person, it may serve to enlighten our investigation, if we advert for a moment to the state of the English Ecclesiastical law upon the subject of partial divorces. By that law there
 
 *208
 
 wei'G three, and only three, canses for such divorces, to wit, adultery, cruelty and unnatural practices ; Shelf, on Mar. and Div. 364, (33 Law Lib. 192.) The first, adultery, is with us made a cause for a total divorce
 
 a vinculo
 
 matrimonii, Rev. Code, ch. 39, sec. 2; and of the last, it is unnecessary for ns to make any remark.
 

 Scevitia, or cruelty, is perhaps the most frequent cause for a partial divorce, and the general ground on which the Court proceeds, in a case of that kind, is danger to the life or health of the party. There must bo ill treatment and personal injury, or the reasonable apprehension of personal injury. “In suits founded on cruelty, (says Mr. Shelford, page 427,) the species of facts, most generally adduced, are, first, personal ill treatment, which is.of different kinds, such as blows or bodily injury of any kind. Secondly, threats of such a description as would reasonably excite, in a mind of ordinary firmness, a fear of personal injury. For causes less stringent than these, the court has no power to interfere, and separate husband and wife; it is necessity alone, which has conferred on the Ecclesiastical Court that power, and in regard to self-protection alone, must the exercise of that power be guided. Under any oilier circumstances, the court can'not put asunder those whom God has joined.” Again, after speaking of the effect of a blow inflicted by a husband upon his wife, he says, “Rut a mere violent act, which occasioned pain and injury to the wife, unaccompanied with any threat or any intentional blow, will not warrant a sentence of separation, for the court has no authority to interfere in cases short of personal violence, or reasonable apprehension of it.” See
 
 Neeld
 
 v. Neeld, 4 Hagg. Ec. Rep. 270. Again, it is said that
 
 “
 
 what merely wounds the mental feelings, is, in few cuses, to he admitted, where they are not accompanied with any bodily injury, either actual or menaced. Mere austerity of temper, petulance of manner, rudeness of language, a want of civil attentions and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty; they are high moral offences undoubtedly ; not innocent,
 
 *209
 
 surely, in any state of life, but still they are not tliat cruelty against which the law can relievo.” Shelf, on Mar. and Div. 432, ‘‘Words of mere present irritation, however reproachful, (says the same author, at page 430,) will not enable the court to pronounce a sentence of separation.” “ Passionate words do not, according to the vulgar observation, break bones, and it is better that they should be borne with, than that domestic society should be broken up, and a husband and wife thrown as loose characters upon the world. Words of menace importing the actual danger of bodily harm, will justify the interposition of the court, as the law ought not to wait till the mischief is actually done. But the most innocent and deserving women will sue in vain for its interposition for words of mere insult, however galling ; and still less will that interference be given, if the wife has
 
 taken upon herself' to avenge
 
 her own wrongs of that kind, and to maintain a contest of retaliation;” see
 
 Oliver
 
 v. Oliver, 1 Hagg. Cons. Rep. 409.
 

 It is manifest from these extracts, that, according to the ecclesiastical law of England, a divorce from bed and board on account of cruelty, cannot be obtained, unless the life or health of the wife is endangered, either by personal violence or by such menaces as would excite in a mind of ordinary firmness a fear of personal injury. Our act upon the subject, undoubtedly liad reference to the English law. But as we took adultery from among the causes for a partial, and placed it with those for a total, divorce, thereby extending the latter, so we have added to the number of causes for the former, to wit, the abandoning of his family by a husband, or his maliciously turning his family out of doors. We have also, as we think, enlarged the meaning of the term “cruelty,” by making i.t embrace, besides cruel and barbarous treatment, endangering life, such indignities to the person as make the wife’s condition intolerable, or her life burdensome. lienee, Ave hold in
 
 Coble
 
 v. Coble, 2 Jones’ Eq. Rep. 392, that an indignity to the person did not necessarily imply a striking, or even touching, the body, but that a charge of adultery, accompanied by a withdrawal from the wife’s bed, and threats of violence,
 
 *210
 
 were sufficient to constitute the offence. The latter circumstance was sufficient to have brought the case within the English rule; but independent of it, we are strongly inclined to think, that a'persistive charge of adultery against a virtuous woman, accompanied by a contemptuous declaration, that she was no longer his wife, and by an abandonment of her bed, is such an indignity to her person, as would entitle her to a partial divorce and to alimony. Whether any other circumstances of insult and injury, short of violence to, or threats against, her person, would be a sufficient ground of relief, and if any, what, it is not necessary for us now to say. If there bo any such, they must have, as an essential ingredient, a wilful and malicious intent to offer insult, and do injury, and such intent must be alleged and proved. A wrong inflicted from mere thoughtlessness, or without due consideration for the feelings or situation of the wife, may deserve censure, but in the absence of malicious intent, it cannot be allowed the effect of sundering the strong bond of marriage.
 

 This review of the English, and our, law, upon the subject of cruelty and indignity to the person, will enable us to determine whether the present petitioner has set forth in her petition,
 
 “
 
 particularly and specially,” causes sufficient to entitle her to the aid of the court.
 

 Before entering minutely into an examination of the facts charged, we feel bound to say, that the whole petition is obnoxious to the objection of too great vagueness and uncertainty in its statements; that it is wanting in particularity and certainty as to
 
 “
 
 acts, persons, times and places.”
 

 But, notwithstanding this general objection, it may be upheld, if it specifies, in any part of it, such facts as show a sufficient ground for relief. The facts which seem to be relied on for that purpose, may be divided into three classes.
 

 • First. The defendant’s cruel treatment of the children of the petitioner by a former marriage.
 

 Secondly. His abusive and insulting language to her and in her presence.
 

 And thirdly. Ilis abusive treatment of certain slaves near
 
 *211
 
 her room while she was sick, and which treatment aggravated her disease, and thereby endangered her life.
 

 1st. The charge of cruel conduct towards the children may be dismissed with a single observation. Even supposing such conduct might amount to an indignity to his wife’s person, if it were intended as an insult to her, which we are not prepared to admit, there is no allegation that it was so intended. So far as appears, it may have been the effect of a more ebullition of passion unduly excited, or an unreasonable dislike to one or more of the children. It vented itself upon the children, which no doubt wounded her feelings, but cannot, in any fair sense, bo deemed an indignity to her person.
 

 2nd. The charge of an imputation of adultery is made in general terms, without the specification of time, place and circumstances. She says that her husband “ either became jealous, or affected to be jealous, of her, and accused her of illicit intercourse with divers persons; sometimes in her presence, and often to other persons.” And in another part of her petition, she states that he “often told her to leave his house, stating that she should stay there no longer, at the same time charging her with illicit intercourse and intimacy with other men.” But she no where intimates that he over used violence to her person, or threatened to do so; that he ever abandoned her bed, or ceased to live with her as his wife; or that she became so indignant at such insulting imputations, that she left his house in consequence of them. Under these circumstances, we cannot give to this charge alone, and unconnected with any other, the force of being such an indignity to her person, as to render her condition intolerable and her life burdensome..
 

 3rd. The last charge, or rather class of charges, is the one about which we have had the most difficulty. The petitioner alleges, that on one occasion, while she was living with the defendant in the county of Perquimons, “ she was ill and confined to her bed, and the defendant became so lost to a sense of self-respect, and his duty to her, as to shoot with a gun, in her hearing, a very valuable negro woman belonging
 
 *212
 
 to her childrenand on the same day, after threatening to kill the negro, he attempted by force to enter the room where the petitioner was confined, for the purpose, as he said, of killing said negro woman. And while she was still ill and confined to her bed, he tied, or caused to be tied, two of his slaves, and brought them into a porch, adjoining her room, and whipped them, or had them whipped there. She alleges that the consequence of such conduct was, that her mind became very much impaired, and she only “recovered her reason after several months’ attentive treatment by a skillful physician, and the attention of kind friends, after she had been ordered to leave, and had left, the home of the defendant.”
 

 If these facts had been charged by the petitioner to have been done by the defendant for the purpose of annoying, harassing or insulting her, they might, taken in connection with the imputation of adultery, have made out a proper cause for a divorce. But, so far as appears from, the petition, he may have had good cause for inflicting punishment upon the slaves, and the only error he committed was in using an improper instrument with which to punish the first, and to have selected an improper time and place for chastising the others. She does not say expressly, but only leaves it to be inferred, that he knew of her sickness, or that his conduct was calculated to aggravate her disease. She makes no positive averment that ho, on that occasion, or at any time during her illness, ordered her to leave his house, but leaves that also to be inferred argumentatively from her. account of her recovery, “ after she had been ordered to leave and had left the home of the defendant.” The language is singularly vague and indefinite upon this point of her being ordered to leave the defendant’s house. She does not say distinctly by whom she was ordered, or when the order was given ; she recites it as a mere incidental transaction, without any specification of time, place, person or circumstance.
 

 We are, therefore, constrained to say, that none of the allegations, contained in the third class of charges, are, either alone, or in connection with the other charges, sufficient (or
 
 *213
 
 at least sufficiently stated) to entitle tlie petitioner to the relief which she seeks.
 

 The interlocutory order, from which the appeal is taken, must be reversed, and this must be certified to the Court below as the law directs.
 

 Per CukiaM, Interlocutory order reversed.