MARY VAIL CAMERON v. BRUCE B. CAMERON.

(Filed 23 November, 1949.)

**1. Judgments § 19: Divorce and Alimony § 12—**

An order relating to alimony *pendente lite* and the custody of the children of the marriage, which is void because rendered out of term and outside the county, cannot be validated by a subsequent similar order signed in the county but without notice.

**2. Divorce and Alimony § 17: Appeal and Error § 14—**

Where, pending the hearing of an action for divorce, an order awarding the custody of the children is entered and an appeal taken therefrom, the judge of the Superior Court is *functus officio* and he has no authority to modify the order prior to the hearing of the cause on its merits.

**3. Evidence § 7e—**

*Prima facie* proof is any substantial evidence which, if not rebutted, is sufficient to support the cause of action or defense.

**4. Divorce and Alimony § 12—**

In order to award alimony *pendente lite,* the court is required to examine the evidence adduced by both parties and find the predicative facts in the exercise of his own sound judgment, and where defendant has offered evidence in rebuttal, a finding that the plaintiff had established such facts *prima facie* is insufficient to sustain the award. G.S. 50-15.

**5. Divorce and Alimony § 19—**

An order awarding the custody of the children pending the hearing of the divorce action on its merits, upon findings that plaintiff had established her cause of action for divorce *prima facie*, and without findings as to the fitness of plaintiff to have the custody of the children, will be remanded.

DEFENDANT's appeal from *Frizzelle, J.,* Spring Term, 1949, SAMPSON Superior Court.

The plaintiff, then living in the County of Guilford, sued her husband, a resident of New Hanover County, in an action for divorce *a mensa et thoro;* and asked for the rescission of a prior deed of separation which

she alleges was obtained by the defendant through fraudulent or inequitable practices. The action was transferred to Sampson County for trial, "for the convenience of witnesses and to promote the ends of justice," and defendant answered in that county.

The complaint alleges numerous acts of defendant inflicting on the plaintiff personal indignities, assaults, humiliation, neglect, all of which she alleges was without fault on her part. She alleges that they were of such nature as to render her condition intolerable and her life burdensome, and that she was finally forced to seek refuge elsewhere. She, therefore, alleges abandonment as one of the grounds of divorce.

*In her complaint the plaintiff asked for alimony pendente lite, suit money, attorneys' fees, expense incurred; and asked the custody of two small children of the marriage.*

The appeal is concerned with these demands, pursued through motions and hearings before the judge holding the courts of the district.

The defendant's answer denies the material allegations of the complaint and pleads by way of recrimination the conduct of plaintiff as provocative and independently violative of marital duties and rights; and by way of further defense asserts a cross-action against the plaintiff for absolute divorce on the ground of adultery. On application of the plaintiff for a bill of particulars the defendant specified a number of incidents, alleging time, place and corespondents, with an averment of other acts with persons unknown to him.

Pursuing the prayer in her complaint, the plaintiff gave notice of her intended application for alimony, attorneys' fees and expenses, and custody of the children, *pendente lite.* The matter came on for a hearing before Judge Frizzelle, holding the courts of the District, on June 2, 1949, at which time the judge heard the plaintiff's pleadings, the evidence and arguments of counsel, and took the matter under advisement, parties consenting that the judgment should be signed outside the county. Judgment was finally signed in Onslow County. Pertinent to the decision are the following excerpts:

> "The action is brought by the plaintiff under G.S. 50-15 for divorce from bed and board, for alimony, and for the custody of the two minor children of the parties, who have been and are now in the custody of the defendant father. The plaintiff in her complaint bases her cause of action on two grounds: first, that the defendant offered such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome; and second, that the defendant wrongfully abandoned her. The plaintiff, in much detail and elaboration, alleges a long continued scheme and course of insults, humiliation, neglect and barbarous treatment and alleges a good

CAMERON *v.* CAMERON.

and meritorious cause of action on both grounds. In his answer, the defendant denies all material allegations in the complaint, and alleges acts of provocation, indiscretion, and gross misconduct on the part of the plaintiff in bar of her right to the relief sought; and by cross-action seeks a decree of absolute divorce on the ground of adultery."

"That plaintiff and defendant are husband and wife and have two infant daughters of their marriage, ages 4½ and 3 years; *prima facie* the defendant abandoned the plaintiff on or about September 1, 1948, and has not provided any subsistence and support for her since said date; that prior to said alleged and *prima facie* abandonment the plaintiff owned valuable real and personal property which produced in 1947 a separate income in her own right of $15,498.84; that prior to said alleged abandonment the defendant *prima facie* procured from the plaintiff a transfer and conveyance of all said real and personal property, and plaintiff has now no property or separate estate and is wholly without income from any kind of property, and has not sufficient means whereon to subsist during the pendency of this action, nor any income to defray the necessary and proper expenses thereof; that said plaintiff is now ill and in need of hospital treatment and is dependent upon the defendant for her support and maintenance; that the plaintiff has *prima facie* incurred bills for necessities for her support since the date of the alleged abandonment in the sum of $2,033.26, which are unpaid, and has borrowed an additional sum of $1,270.65 for her necessary maintenance prior to the institution of this action in addition to financial aid she has received from her mother."

"That plaintiff's complaint alleges a good and meritorious cause of action; and although the defendant has filed answer denying each and every material allegation in the complaint, and alleging the adultery of the plaintiff as grounds for an absolute divorce, the plaintiff has filed a reply and has denied, under oath, the adultery alleged against her in the answer; and the Court finds that such denial is made in good faith and that upon the record and the evidence the Court cannot and does not find that the plaintiff has committed adultery as alleged by the defendant."

"It appearing satisfactorily to the court and it appearing *prima facie* that the allegations of the complaint are true, it is thereupon CONSIDERED, ORDERED, ADJUDGED AND DECREED, in the discretion of the Court, having due regard to the circumstances of the parties, that the defendant Bruce B. Cameron, Jr. pay the plaintiff Mary Vail Cameron, as alimony *pendente lite,* the sum of $800.00 per month commencing on December 23, 1948, the date of plaintiff's motion therefor, and a like sum of $800.00 per month on the 23rd day of each

and every month thereafter, pending the final determination of this cause, the six monthly payments accrued from December 23, 1948, to May 23, 1949, in the aggregate sum of $4,800.00 to be paid within ten days from this date, and the subsequent payments of $800.00 per month to be paid on the 23rd day of each month hereafter commencing on June 23, 1949, pending the final determination of this cause."

Regarding the custody of the children in general, the order allowed them to remain with the defendant, with permission of visiting by the mother at stated intervals under prescribed conditions. To this order defendant excepted and appealed.

Thereafter, while the appeal was still pending, defendant was notified of a further motion for hearing at Kinston, in Lenoir County, on June 24, 1949, respecting the custody of the children. At the time and place set for the hearing, attorneys for the defendant entered a special appearance and moved to quash, or dismiss the motion. This was overruled and judgment was entered; and an order was made substantially enlarging the time plaintiff should have custody of the children; to this defendant excepted and appealed. Subsequently, without further notice, Judge Frizzelle entered an order of June 30 in continuation of the proceeding set for a hearing and heard in the County of Lenoir in which the former order made outside the County of Sampson was affirmed or a similar order made, the court taking this course for the expressed reason "that the defendant proposed to challenge the jurisdiction of the court to enter such order in Kinston outside of the County of Sampson where the cause is pending." This order was signed in Sampson County Courthouse out of term and without further notice.

The defendant then applied to the Honorable Walter P. Stacy, Chief Justice of the Supreme Court, for a writ of *supersedeas*. After a hearing in which counsel on both sides argued the matter and submitted briefs, the *supersedeas* was issued, commanding those concerned to desist from enforcement of the orders aforesaid until determination of the matter on appeal.

Meantime, in view of the taking of certain depositions by the defendant in other states, an order had been made that the defendant pay $800 as expense money to enable the plaintiff to be represented at the taking of these depositions. This order the defendant voluntarily performed, and discharged that matter from further consideration.

The stipulation of opposing counsel confined the present controversy to the two orders of Judge Frizzelle dated, respectively, June 2 and June 30.

Having excepted and appealed from the orders as stated, the defendant filed his assignments of error which, as far as necessary to the decision, are herewith considered. ·

*Welch Jordan and Butler & Butler for plaintiff, appellee.*

*Stevens, Burgwin & Mintz, Howard H. Hubbard, and Jeff D. Johnson, Jr., for defendant, appellant.*

SEAWELL, J.　*The order of June 30.*　From the record we find that subsequent to the rendition of judgment upon the order of June 2, considered *infra,* and while appeal therefrom was still pending, notice was given to the defendant of a hearing at Kinston, in Lenoir County, upon the motion by the plaintiff for the custody of the two children dealt with in the order of June 2.　At the time and place set for the hearing defendant's counsel entered a special appearance and moved to quash or dismiss the motion, which was overruled, and defendant excepted and appealed. Judge Frizzelle proceeded with the hearing and by order signed in Kinston, Lenoir County, on the 27th of June, made an order greatly enlarging plaintiff's custody of the children pending the appeal.　Having become uncertain as to his jurisdiction under the circumstances, the Judge subsequently withdrew this order and signed an order in the courthouse in Sampson County of precisely similar import, except for the statement therein that it was made in Sampson County.　The defendant appealed from this order and, having given the requisite bonds on appeal, applied to Hon. Walter P. Stacy, Chief Justice of the Supreme Court, for *supersedeas* to stay execution, which was granted on the ground that both the orders of June 27 and June 30 were void.

The Court is of the opinion that the validity of these orders, which is still insisted upon here with respect to the order of June 30, resolves itself into the simple question whether the court had jurisdiction either to hear the matter or render judgment outside the county where the case is pending, and this must be answered, No.　No validity was given to the order of June 30 in the attempted recapture of jurisdiction by signing it in the courthouse in Sampson County, not merely because the notice was given and the hearing had in Lenoir County, but because no notice of the intended rendition of the judgment in Sampson County had been given.　*Patterson v. Patterson,* 230 N.C. 481; *Cahoon v. Brinkley,* 176 N.C. 5, 96 S.E. 650; *Gaster v. Thomas,* 188 N.C. 346, 124 S.E. 609; *Brown v. Mitchell,* 207 N.C. 132, 176 S.E. 258.

There is another reason especially arising out of the status of the case during appeal; under the circumstances of this case the judge was *functus officio,* his authority over the matters involved having ended with the appeal from the order of June 2, which took the case out of his juris-

diction. *Lawrence v. Lawrence,* 226 N.C. 221, 222, 37 S.E. 2d 496; *Page v. Page,* 167 N.C. 346, 83 S.E. 625.

The order of June 27 is eliminated by the stipulation of counsel. The order of June 30, for the reasons stated, is void and must be vacated.

*The order of June 2.* The appeal under consideration is not from a final judgment but from orders made on preliminary motions in the cause, peculiar to actions of this kind, and a detailed statement of the voluminous evidence presented on the hearing is not necessary at this stage of the proceeding. We are, of course, dealing with the evidence on which the order of June 2 was made, but only as far as may be necessary to determine whether the court below applied to it the consideration required by the relevant statute in the process of finding facts necessary to support the order, or judgment, involved in the appeal. It is sufficient to say that the evidence adduced by each of the parties, respectively, posed inferences of fact on either side of the controversy, addressed to the determinative questions, upon the resolution of which the order or awards must rest. Of what comparative strength these inferences may be is not for us to say; the thing of importance here is whether they were given due regard by the hearing judge.

His Honor's conception of the duty resting upon him in passing on the evidence and finding these essential facts is revealed in the general summary statement made just before proceeding to the awards: "It appearing satisfactorily to the Court and it appearing *prima facie* that the allegations of the complaint are true . . ." etc. This, taken in connection with the repeated use of the technical and well understood term *prima facie* in more specific relation to individual findings of fact necessary to support the judgment leads inescapably to the conclusion that the hearing judge deemed it to be his duty to go into the matter and examine the evidence only as far as might be necessary to find whether plaintiff had made a *prima facie* case, and made his orders accordingly, without addressing himself to the truth or falsity, or, to put it otherwise, the probative force, of the evidence before him, or even necessarily including that of the defendant.

The Judge, of course, knew the legal significance of the term and the necessity of applying it aptly. *Prima facie* has been defined as "a cause of action or defense sufficiently established by a party's evidence to justify a verdict in his favor, provided the other party does not rebut such evidence," in Ballentine's Law Dictionary, p. 1009. The term *prima facie* is said to mean "as it first appears; at first sight; at first view; on its face; on the face of it; on first appearance; presumably; so far as can be judged by the first disclosure," 49 C.J. 1346. In our jurisdiction any substantial evidence, unrebutted, is sufficient, *prima facie,* to support the allegation.

This is as far as the judge was required to go under the common law, or the relevant statute prior to the amendment of 1883, discussed below. *Sparks v. Sparks,* 69 N.C. 319; *Earp v. Earp,* 54 N.C. 118; *Everton v. Everton,* 50 N.C. 202; *Gaylord v. Gaylord,* 57 N.C. 74. The significance of the relevant statute, G.S. 50-15, as it now stands is made clear by comparing the former law with amendments made to it.

The former statute, Sec. 38 of Chapter 193, of the Laws of 1871-72, provided: "If any married woman shall apply to the court for a divorce from the bonds of matrimony or from bed and board, with her husband, and shall set forth in her complaint *such facts as if true will entitle her to the relief demanded . . ."* etc. Chapter 67, Public Laws of 1883, struck out of that statute the words "as if true will entitle her to the relief demanded," and inserted in lieu thereof the words, "which upon application for alimony *shall be found by the judge to be true* and to entitle her to the relief demanded in the complaint;" and amended the same section of the 1871-72 law by adding to the provision of notice the following: "In all cases of application for alimony *pendente lite* under this or the following section, whether in or out of term, *it shall be proper and admissible for the husband to be heard by affidavit in reply . . ."* etc. This definitely disposed of the *prima facie* rule theretofore obtaining and constitutes the law as it stands today.

Space will not permit us to trace the history of this statute,—of nearly 100 years standing,—to note the various amendments and collate the decisions in correlated order. It is sufficient to say that under a proper interpretation of this statute it is no longer sufficient that the judge merely examine the evidence or testimony to see whether there is *any evidence* to support the charges or allegations which would operate as a *prima facie* showing. He must, by application of his sound judgment, pass upon its truth or falsity and find according to his conviction. The effect of the statute is to retire the *prima facie* rule in actions brought by the wife against the husband where alimony *pendente lite* is sought and to substitute for it a finding of verity. The statute requires not only notice and hearing, but a finding as to the truth of the essential conditions on which the allowance is predicated.

Whether the purpose of the statute is to screen the courts against pretextual grievances or to protect the respondent from sequestration of his property or jeopardy of his liberty upon false premises, we need not inquire. Perhaps its purpose simply was to give respondent a measure of justice by permitting him to be heard before a matter-of-course invasion of his estate should be made. At any rate the kind of hearing this statute provides, has, by its enactment, become a policy of the State and must be obeyed by its substantial observance. *Massey v. Massey,* 208 N.C. 818, 182 S.E. 446; *Caudle v. Caudle,* 206 N.C. 484, 174 S.E. 304;

*Horton v. Horton,* 186 N.C. 332, 119 S.E. 490; *Garsed v. Garsed,* 170 N.C. 672, 87 S.E. 45; *Moore v. Moore,* 130 N.C. 333, 41 S.E. 943.

In *Medlin v. Medlin,* 175 N.C. 529, 531, 95 S.E. 881, (cited by appellee), in which alimony and defense money was asked by the wife sued for divorce on grounds of her adultery, the contention was made that no award could be made to the wife in a case of that sort because it was not covered by the statute; and the Court held that in case the statute did not apply, alimony could still be awarded under the common law; and that the statute did not abrogate the remedy given at common law. The case dealt solely with the remedy, and not with the rule relating to the consideration of the evidence through which it is sought, or the *prima facie* rule formerly applied.

We can logically follow *Medlin v. Medlin* in its holding that the statute does not abrogate the principle on which alimony was allowed at the common law. But the statute is not a mere affirmance of the common law—this would be supererogatory. The procedure instituted by the statute is so opposed to the *prima facie* rule of the common law as to substantially modify it, and does not leave the effect of the 1883 amendment open to question.

However, the following occurs in *Medlin v. Medlin,* loc. cit., p. 532: "In *Webber v. Webber, supra,* very clear intimation is given that the statute itself, by correct interpretation, should be extended to cover all cases where the wife was a *party* to a divorce proceedings, whether as plaintiff or defendant . . ." *Webber v. Webber* clearly states that the statute (then unamended), should be so construed; and if so construed, the amendments of 1883 should fully apply, and result, as foreshadowed, in harmonizing the law.

But this has little bearing on the proposition we are discussing. As we have intimated above, alimony was not asked except in connection with the suit of the wife; and the record shows that the challenged order was predicated both ostensibly and actually on the *prima facie* findings relating to the wife's action. If the suit of the husband entered into the consideration at all, the suit of the wife was at least the major consideration and cannot be dissected out of the findings. This inseparability alone would affect the whole proceeding with error.

It is pointed out by the appellant that the judge made no findings of fitness as to the plaintiff for the custody of the children under the challenging evidence of the defendant. Apart from that we think the question of custody is so intimately connected with the other matters involved in the appeal that it should be left to a rehearing.

In view of the errors we have pointed out, we have been unable to sustain the orders and awards made in the judgments of June 30, 1949, and June 2, 1949; and these orders are vacated, except as to the order

allowing $800 expense money for representation and appearance at the taking of depositions outside the State, which, as we have said, was voluntarily performed by the defendant and must be regarded as an accomplished fact.

The cause will be remanded to Sampson County to the end that a hearing *de novo* may be had with respect to the matters involved in the vacated orders.

Error and remanded.