STANLEY M. CARPENTER v. MARY KELLY SHAVER CARPENTER.

(Filed 26 June, 1956.)

**1. Judgments § 27b—**

Where it appears on the face of the record that the court rendering a judgment was without jurisdiction of the parties or the subject matter, the judgment is a nullity and it may be attacked by any person adversely affected thereby at any time, collaterally, or otherwise.

**2. Divorce and Alimony § 3—**

In an action for divorce, the truth of the jurisdictional averments required by statute to be set forth in the affidavit is for the determination of the court, even though the judge, in his discretion, may submit such questions of fact to a jury and adopt the jury's findings; but averments referring to the grounds or cause of action for divorce set forth in the complaint, relate to issues of fact for the jury alone. G.S. 50-8.

**3. Appeal and Error § 59—**

A decision of the Supreme Court must be interpreted within the framework of the facts of that particular case.

**4. Judgments § 27e: Divorce and Alimony § 22—**

If a decree of divorce, regular in all respects on the face of the judgment roll, is obtained by false swearing, by way of pleading and of evidence, relating to the cause or ground for divorce, it is voidable but not void, and may be set aside upon motion in the cause by a party to the end that the cause may be retried.

**5. Same—**

Where, in an action for divorce on the ground of two years separation, defendant appears and files answer admitting the allegations as to the ground for divorce, neither party to the action may thereafter attack the decree for false swearing in regard to the cause or ground for divorce.

**6. Judgments § 24: Divorce and Alimony § 22—**

A stranger to a divorce decree whose pre-existing rights are adversely affected thereby may attack same on the ground of false swearing in regard to the ground for divorce, but this right of a stranger to attack the decree does not obtain when his interests arise entirely subsequent to the rendition of the decree.

**7. Same—**

In plaintiff's action to have his marriage declared void on the ground that his spouse's prior decree of divorce from her first husband was void, the plaintiff may not attack the validity of the divorce decree by alleging false swearing or fraud in regard to the ground or cause for divorce upon which the decree was based.

PARKER, J., dissenting.

BARNHILL, C. J., concurs in dissent.

APPEAL by defendant from order of *Hall, Resident Judge,* entered 13 August, 1955, in Chambers, DURHAM.

Action commenced 15 April, 1955, to annul and declare void *ab initio* the purported marriage of plaintiff and defendant on the ground that defendant was incapable of contracting a valid marriage, she then having a living husband from whom she had not been divorced.

This appeal is from the court's ruling on defendant's motion to strike designated portions of the complaint.

Plaintiff's unchallenged allegations are as follows: "1. That he is now and was on April 12, 1947, a resident citizen of the County and State aforesaid, and has been a resident of the State of North Carolina all of his life. 2. That the defendant is a resident citizen of the County and State aforesaid. 3. That on the 12th day of April, 1947, in the City and County of Durham, the plaintiff in good faith entered into a marriage ceremony with the defendant and that subsequent thereto they resided together as man and wife until March 6, 1953."

As to paragraph 6, defendant's motion was to strike the word "purported" each time it appears therein. Paragraph 6, unchallenged except as stated, is as follows: "6. That this plaintiff met the defendant in January of 1947 and thereafter continued his association with her through January, February, March and the first part of April of said year. That relying upon the statements made to him by the defendant that she and her former husband, Floyd N. Shaver, had been divorced and relying further upon the divorce decree entered in the case of the said Mary K. Shaver v. Floyd N. Shaver, this plaintiff in good faith, proposed marriage to the defendant, and was accepted by her, and a purported marriage ceremony between this plaintiff and the defendant was entered into between them on the said 12th day of April, 1947. That this plaintiff did not then know, nor does he now know Floyd N. Shaver, former husband of the defendant. That at the time of the purported marriage ceremony between this plaintiff and the defendant, this plaintiff acted in good faith and verily believed that the bonds of matrimony existing between the defendant and her husband, Floyd N. Shaver, had been legally dissolved."

Defendant moved to strike all of paragraph 8, the allegations thereof being as follows: "8. That this plaintiff is informed and believes and upon such information and belief alleges that the purported marriage between him and the defendant is void *ab initio* for that at the time of the said purported marriage ceremony between this plaintiff and defendant, the defendant was then married to Floyd N. Shaver, and that said bonds of matrimony between her and Floyd N. Shaver had not been dissolved by death, valid divorce or otherwise."

Defendant moved to strike all of paragraphs 4, 5 and 7, the allegations of which are summarized below:

CARPENTER v. CARPENTER.

1. The divorce action of "Mary K. Shaver v. Floyd N. Shaver" was instituted 10 May, 1946. Mary K. Shaver, plaintiff therein, alleged that she and Floyd N. Shaver, defendant therein, were married on 21 June, 1927; that they lived together as man and wife until 1 January, 1944, when they separated by mutual consent and continuously thereafter lived separate and apart; and that on 27 May, 1946, Floyd N. Shaver answered the complaint, admitting said allegations and joining in the prayer for relief.

2. The "said divorce action was heard before a Judge and Jury on May 27, 1946, and on the basis of the allegations contained in the complaint and the admissions contained in the answer and the testimony of plaintiff and witnesses offered by her, a judgment purporting to dissolve the bonds of matrimony existing between the said Mary K. Shaver and the said Floyd N. Shaver was entered . . ."

3. ". . . after the purported marriage ceremony between this plaintiff and the defendant, they resided together as man and wife until March 6, 1953, at which time the defendant abandoned this plaintiff and has since lived separate and apart from him." Since the abandonment of plaintiff by defendant on 6 March, 1953, plaintiff "has ascertained from reliable sources that the defendant, Mary Kelly Shaver Carpenter, was not legally divorced from her husband, Floyd N. Shaver." Plaintiff alleges further that the allegations and evidence upon which said divorce decree were obtained were false; that defendant and Shaver had not separated by mutual consent on 1 January, 1944, but in fact had lived together as man and wife during 1944, 1945 and part of 1946; that plaintiff's said allegations and evidence constituted a fraud on the Superior Court of Durham County; and that the divorce decree predicated thereon is void ab initio.

The court denied defendant's said motion in its entirety. Defendant excepted and appealed.

Reade, Fuller, Newsom & Graham and Oscar G. Barker for plaintiff, appellee.

Haywood & Denny for defendant, appellant.

BOBBITT, J. It is noted that defendant's appeal was docketed before the effective date of Rule 4(a). 242 N.C. 766 (Appendix). Docketed as #671, Fall Term, 1955, it was carried over and docketed as #668, Spring Term, 1956.

Defendant's motion, as related to paragraphs 6 and 8, was properly denied. These allegations contain no specific reference to the divorce action or decree.

It is important to gain a true perspective of the precise question for decision. To do so, we must bear in mind the matters stated below.

The action is for annulment of the marriage. To obtain this relief, plaintiff attacks the divorce decree. This action concerns its validity as between plaintiff and defendant, that is, whether it constitutes a bar to plaintiff's action. If plaintiff should prevail, the judgment would decree that the marriage, not the divorce decree, was void. As between themselves, the parties to the divorce action would not be directly affected by such judgment. Indeed, Shaver, defendant in the divorce action, is not a party herein.

The allegations challenged by defendant's motion attack the divorce decree solely on the ground that it is based on false swearing in pleading and in testimony relating to whether the Shavers had separated and thereafter lived separate and apart continuously for two years or more next preceding 10 May, 1946, the date the divorce action was commenced. The allegations imply that, upon the face of the judgment roll, the divorce proceedings, including the decree, were in all respects regular, disclosing that the court had jurisdiction both of the parties and of the subject matter. At least, nothing to the contrary is alleged; and no point is involved here as to defects, jurisdictional or otherwise, appearing on the face of the judgment roll. Nor is it now alleged that the plaintiff in the divorce action was not in fact a *bona fide* resident of North Carolina for the time required to confer jurisdiction on the court.

There is no question but that the divorce decree is valid if in fact the Shavers separated on 1 January, 1944, and lived separate and apart continuously thereafter. Such separation constituted a recognized ground for absolute divorce. G.S. 50-6.

The precise question is this: Can plaintiff attack collaterally the divorce proceedings and the decree, for the purpose of nullifying such decree in so far as it affects his marriage, by offering evidence tending to show that, contrary to what appears on the face of the judgment roll, the Shavers had not been separated for the requisite statutory period and that therefore the decree is void as to him because based on perjury in respect of the ground for divorce? If so, the allegations must stand; otherwise, they must be stricken. G.S. 1-153; *Daniel v. Gardner,* 240 N.C. 249, 81 S.E. 2d 660.

Admittedly, if plaintiff can attack the divorce decree at all he must do so (collaterally) in an independent action; for, as held this day, he is a stranger to the divorce action and cannot intervene therein and attack the divorce decree by motion in the cause. *Shaver v. Shaver, post,* 309. But it should be borne in mind that the only question before us is whether plaintiff can collaterally attack the divorce decree *on the ground alleged,* not whether plaintiff can attack collaterally the divorce decree on other grounds. Incidentally, cases such as *McCoy v. Justice,* 199 N.C. 602, 155 S.E. 452, and *Horne v. Edwards,* 215 N.C. 622, 3 S.E. 2d 1, in which "extrinsic" fraud and "intrinsic" fraud are distin-

guished, relate to the proper procedure in each instance by *a party* to the original action.

The question before us is one of first impression in this jurisdiction. However, for the purpose of drawing the question into clearer focus, consideration of certain of our decisions seems appropriate.

Prior to *Williams v. North Carolina,* 317 U.S. 287, 87 L. Ed. 279, 63 S. Ct. 207, North Carolina did not recognize the *jurisdiction* of the courts of a foreign state, albeit the state of the plaintiff's domicile, to render a divorce decree valid and enforceable in North Carolina, against a resident of this State who did not appear in the action and was only constructively served with notice of its pendency. Numerous decisions to this effect are cited in the opinions in *S. v. Williams,* 220 N.C. 445, 17 S.E. 2d 769. They are based on the early North Carolina decision in *Irby v. Wilson,* 21 N.C. 568, and the later United States decision in *Haddock v. Haddock,* 201 U.S. 562, 50 L. Ed. 867, 26 S. Ct. 525. It was so decided in *Pridgen v. Pridgen,* 203 N.C. 533, 166 S.E. 591, an action by a second husband for annulment of his purported marriage to the defendant based on her alleged incapacity to contract a valid marriage, she having a living husband. She relied upon a divorce decree obtained in Georgia by her first husband when she resided in North Carolina. The jurisdiction of the Georgia court was predicated solely on service of summons by publication. Hence, it appeared on the face of the judgment roll that the Georgia court had not acquired jurisdiction of the defendant. The *Pridgen case* is direct authority for the proposition that in such annulment action the purported divorce may be attacked collaterally when it appears *on the face of the record* that the court granting such decree had no jurisdiction of the person of the defendant. Although not an annulment action, it was held in the basic case of *Irby v. Wilson, supra,* that a Tennessee divorce decree, entered under similar circumstances, was subject to collateral attack, it appearing *on the face of the record* that "it was not an adjudication between any parties," since the Tennessee court had no jurisdiction of the person of the defendant.

Unquestionably, when it appears *on the face of the record* that a court has no jurisdiction, either of the person or of the subject matter, any judgment it attempts to render is a nullity and so may be attacked by any person adversely affected thereby, at any time, collaterally or otherwise. *Simmons v. Simmons,* 228 N.C. 233, 45 S.E. 2d 124; *Fowler v. Fowler,* 190 N.C. 536, 130 S.E. 315.

In *Rodriguez v. Rodriguez,* 224 N.C. 275, 29 S.E. 2d 901, *Guerin v. Guerin,* 208 N.C. 457, 181 S.E. 274, *Harrell v. Welstead,* 206 N.C. 817, 175 S.E. 283, *Fowler v. Fowler, supra,* and cases cited, it appeared *on the face of the record* that the court had not obtained jurisdiction of the person of the defendant. In the *Rodriguez* and *Fowler cases,* the

attempted service by publication was held fatally defective because the affidavit did not comply with the requirements of G.S. 1-98. When the summons is by publication, no jurisdiction is acquired over the person of the defendant unless it is made to appear by affidavit that everything necessary to dispense with personal service has been done. *Comrs. of Roxboro v. Bumpass,* 233 N.C. 190, 63 S.E. 2d 144.

Moreover, when service of summons by publication is based on a false and fraudulent affidavit, the court acquires no jurisdiction of the person of the defendant; and, upon motion in the cause by the party upon whom no process has been served, the court will set aside the judgment. *Hatley v. Hatley,* 202 N.C. 577, 163 S.E. 593; *Fowler v. Fowler, supra.* The same rule applies when the judgment is apparently regular, the judgment roll showing service or appearance when in fact there was none. *Monroe v. Niven,* 221 N.C. 362, 20 S.E. 2d 311. And when the judgment roll, save the judgment itself, was lost, the record failed to disclose service; and a party to the judgment was permitted to attack it collaterally by showing that no summons was ever served on her. *Downing v. White,* 211 N.C. 40, 188 S.E. 815. Too, letters of administration were revoked, upon motion of a person adversely affected thereby, upon proof of facts establishing that the power to grant such letters was not *within the jurisdiction* of the clerk who issued them. *Reynolds v. Cotton Mills,* 177 N.C. 412, 99 S.E. 240.

In such cases, the motion raises questions of fact; and the court has the power and the duty to hear evidence and find the facts, subject to review, determinative of its jurisdiction. *Dellinger v. Clark,* 234 N.C. 419, 67 S.E. 2d 448; *Miller v. Roberts,* 212 N.C. 126, 193 S.E. 286; *Aycock v. Cooper,* 202 N.C. 500, 163 S.E. 569.

Likewise, a decree of absolute divorce will be declared void if the court was without power or jurisdiction to render it because of the insufficiency of the facts found by the jury, when this appears *on the face of the record.* Such decree may be attacked directly by motion in the cause, *Ellis v. Ellis,* 190 N.C. 418, 130 S.E. 7, or collaterally, *Saunderson v. Saunderson,* 195 N.C. 169, 141 S.E. 572.

Here the jurisdiction of the Superior Court of Durham County of the person of the plaintiff and of the defendant of the divorce action is not in controversy. And, if the plaintiff had a cause of action for absolute divorce, that court had jurisdiction to try it. It is not alleged that the issues answered by the jury were insufficient to support the decree. Rather, it is urged that in North Carolina the causes for divorce and the prerequisites for jurisdiction are statutory, *Ellis v. Ellis, supra;* that the filing of the affidavit required by G.S. 50-8 is a prerequisite to jurisdiction; and that, if an essential averment therein is sufficient on its face but false in fact, even though it relates solely to the alleged cause for divorce, such falsity destroys the foundation on

which the jurisdiction of the court depends and any decree of absolute divorce based thereon is void for lack of jurisdiction of the subject matter.

There is no allegation here that the affidavit on its face did not comply fully with G.S. 50-8. Of course, if the affidavit is insufficient on its face, or if no affidavit was filed, a different question would be presented; for such jurisdictional defect would appear on the face of the record. Furthermore, such facts could be shown in support of the allegations of paragraph 8 of the complaint. We assume, for present purposes, that plaintiff filed with her complaint an affidavit which on its face met the requirements of G.S. 50-8.

This proviso of G.S. 50-8 is significant: "Provided, however, that if *the cause for divorce* is two years separation then it shall not be necessary to set forth in the affidavit that *the grounds for divorce* have existed at least six months prior to the filing of the complaint, . . ." (Italics added.) This is an exception to the statutory requirement in respect of the other *causes for divorce,* or *grounds for divorce,* prescribed by G.S. 50-5; for then the affidavit, except under emergency circumstances not relevant here, must set forth "that the facts set forth in the complaint, *as grounds for divorce,* have existed to his or her knowledge at least six months prior to the filing of the complaint." (Italics added.) The statute, G.S. 50-10, denies, and requires findings of fact by a jury, only as to "the material facts in every complaint." G.S. 50-8 required that the jurisdictional facts as to plaintiff's residence be set forth in the affidavit, not in the complaint. In the complaint, the cause of action, or ground for divorce, is alleged. True, the approved practice has been to submit to the jury an issue as to residence of plaintiff (or defendant). With reference to such practice, we call attention to the rule that the trial judge, in his discretion, *may* submit questions of fact to a jury and adopt its findings. *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246; *In re Housing Authority,* 235 N.C. 463, 70 S.E. 2d 500. In short, the statutes referred to draw a distinction between jurisdictional facts and the material facts constituting the cause of action or ground for divorce.

G.S. 50-8, as of 1946, will be found in G.S., Vol. 2. Subsequent amendments appear in G.S., Vol. 2A, recompiled in 1950, Session Laws 1951, Ch. 590; Session Laws 1955, Ch. 103. We note this because the statute was rewritten and substantially amended, particularly by the Act of 1951. As related to the Shaver divorce, we look to the statute in force in 1946.

By reason of The Code, sec. 1287, later G.S. 50-8, the court acquired no jurisdiction unless the plaintiff filed *with his complaint* an affidavit containing the required statutory averments. The filing of this affidavit was mandatory. Unless the accompanying affidavit contained

all essentials, the court had no jurisdiction; and, such defect appearing on the face of the record, this Court, upon motion then made for the first time or *ex mero motu,* dismissed the action. *Nichols v. Nichols,* 128 N.C. 108, 38 S.E. 296; *Hopkins v. Hopkins,* 132 N.C. 22, 43 S.E. 508; *Clark v. Clark,* 133 N.C. 30, 45 S.E. 342; *cf. Hodges v. Hodges,* 226 N.C. 570, 39 S.E. 2d 596.

But, "when the proper affidavit is made the court acquires jurisdiction of the cause." *Kinney v. Kinney,* 149 N.C. 321, 63 S.E. 97. This Court has recognized the distinction between the material facts constituting the cause of action to be alleged in the complaint and the jurisdictional facts required to be set forth by affidavit. *Williams v. Williams,* 180 N.C. 273, 104 S.E. 561. An averment required in the affidavit, but not in the complaint, does not present an issue for jury determination. "The pleadings in the action present the issue which should be submitted to a jury." *Kinney v. Kinney, supra.*

G.S. 50-8 required that the affidavit contain an averment "that the facts set forth in the complaint are true to the best of affiant's knowledge and belief." The facts so set forth are the material facts relating to the cause for divorce. These allegations go to the merits of the cause of action. They raise an issue of fact for the jury. The court cannot finally determine them at the original trial of the cause or at any subsequent time. The question confronting us is this: After the jury has determined the issue upon the original trial, what are the rights of a party or of a stranger, respectively, to attack the judgment on the ground that the verdict and judgment were procured by false testimony?

It is true that we find in our decisions, notably *Woodruff v. Woodruff,* 215 N.C. 685, 3 S.E. 2d 5; *Young v. Young,* 225 N.C. 340, 34 S.E. 2d 154, and *Henderson v. Henderson,* 232 N.C. 1, 59 S.E. 2d 227, statements which, considered apart from the factual situations under consideration, tend to support plaintiff's contention. But we are mindful of the apt expression of *Barnhill, J.* (now *C. J.*): "The law discussed in any opinion is set within the framework of the facts of that particular case . . ." *Light Co. v. Moss,* 220 N.C. 200, 17 S.E. 2d 10.

In the *Woodruff, Young* and *Henderson cases,* the summons was by publication. The defendant had no knowledge of the pendency of the action until after trial and judgment. In the *Woodruff* and *Young cases,* the motion was *to set aside* the divorce decree. It was predicated, at least in part, upon the falsity of plaintiff's allegations and testimony as to two years separation, the alleged cause for divorce. In the *Woodruff case,* upon which the *Young* and *Henderson cases* are based, this Court stated: "A complaint in a divorce action accompanied by a false statutory affidavit, knowingly made, is as fatal as a complaint without the affidavit." But it must be borne in mind that in the *Woodruff* and

*Young* cases the matter then before the court was whether, upon the findings of fact made or to be made by the trial court, the divorce decree should be set aside and the defendant permitted to file answer and contest the case before a jury on the issue relating to two years separation.

Clearly, the court could not make *a final* determination of this issue. Determination thereof had to be by jury in the divorce action. The court's determination, based on its findings of fact, extended only to the setting aside of the divorce decree, to the end that the case stand for retrial as a contested case, *not dismissed for lack of jurisdiction* of the subject matter. Thus, its factual determinations, made upon consideration of such motion, did not destroy or oust the jurisdiction of the court. Rather, they constituted the basis for setting aside the divorce decree so as to permit the court to exercise its jurisdiction over the parties and the subject matter and try the issue under circumstances where each party had opportunity to prosecute or defend the case before a jury. In effect, the setting aside of the divorce decree was analogous to the allowance of a motion to set aside a judgment on the ground of surprise, excusable neglect, etc., under G.S. 1-220. In the *Henderson* case, the approved finding of fact that the plaintiff had not been a resident of North Carolina for the requisite period to invoke the jurisdiction of the court was in itself a sufficient basis for declaring the decree void for lack of jurisdiction, the defendant having entered a special appearance. Thus, in relation to the facts presented, the *Woodruff*, *Young* and *Henderson* cases have our full approval.

Where fraud on the court deprives the defendant of due process, that is, due notice and opportunity to defend, and hence of jurisdiction of the person of the defendant, the court, upon sufficient findings, will set aside the decree. *McLean v. McLean,* 233 N.C. 139, 63 S.E. 2d 138.

Fraud that relates only to the merits between the parties—the issues joined by the pleadings—is considered differently from fraud that prevents a defendant from presenting his defense. If a judgment is to be declared void, so as to mark a final adjudication of the rights of the parties, there is an unbroken line of decisions of this Court to the effect that this may be accomplished only when it appears that the witness who swore falsely has been convicted of perjury. *Dyche v. Patton,* 56 N.C. 332; *Moore v. Gulley,* 144 N.C. 81, 56 S.E. 681; *Mottu v. Davis,* 153 N.C. 160, 69 S.E. 63; *Williamson v. Jerome,* 169 N.C. 215, 85 S.E. 300; *Kinsland v. Adams,* 172 N.C. 765, 90 S.E. 899; *McCoy v. Justice, supra.* To what extent, if any, this rule is impaired by *Horne v. Edwards, supra,* we need not now decide. Reference to these cases is made solely to point up the distinction between the setting aside of a judgment to the end that opportunity to defend will be given the defendant and a final adjudication of the rights of the parties.

Our conclusion is this: As against challenge on the ground of false swearing, by way of pleading and of evidence, *relating to the 'cause* or *ground for divorce*, a divorce decree, in all respects regular on the face of the judgment roll, is at most *voidable*, not void. *Shammas v. Shammas*, 9 N.J. 321, 88 A. 2d 204. Upon motion in the cause, and upon sufficient findings of fact made by the court incident to its determination thereof, the divorce decree may be set aside; but, when set aside, the jurisdiction of the court is not destroyed. Rather, the court will continue to exercise its jurisdiction and retry the case.

"The power to hear and determine a cause is jurisdictional." *Grossman v. Grossman*, 315 Ill. App. 345, 43 N.E. 2d 216. "Jurisdiction of a court to hear and determine a cause does not depend upon actual facts alleged but upon authority to determine the existence or non-existence of such facts and render judgment according to such finding." *People v. Prystalski*, 358 Ill. 198, 192 N.E. 908, quoted in *Grossman v. Grossman, supra*.

Apparently, this Court has considered no cause, in respect of a motion to set aside a divorce decree, regular on the face of the judgment roll, where the defendant was personally served with summons, or made a general appearance, or had actual knowledge or notice of the pendency of the action.

We must now consider whether plaintiff, a second spouse, can attack the Shaver divorce decree on the ground alleged.

While it does not appear in *this record* that Shaver, defendant in the divorce action, has remarried, it does appear affirmatively that he filed answer in the divorce action and admitted the allegations of the complaint as to two years separation. Under the facts alleged, both reason and weight of authority impel the conclusion that neither party to the divorce action could now attack the decree and thereby nullify the marriage of plaintiff and defendant. Annotation: 12 A.L.R. 2d 153; see also, Restatement of the Law, Conflict of Laws, sec. 112. Consequently, this action is distinguishable from cases where the marital status of a second spouse is in jeopardy and subject to be nullified if the aggrieved party in the divorce action should elect to take action to set aside the decree.

As to general principles applicable to collateral attack of a judgment by a stranger, these excerpts from Freeman on Judgments, Fifth Edition, Vol. 1, will suffice. Sec. 318: "The rule is correctly stated in Cowen, Hill and Edwards' note 291 to Phillipps on Evidence, as follows: 'Judgments of any court can be impeached by strangers to them for fraud or collusion; but no judgment can be impeached for fraud by a party or privy to it.' " Sec. 319: "It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment were given full credit and effect, would

CARPENTER *v.* CARPENTER.

be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment." Sec. 258: "To permit third persons to become interested after judgment, and to overturn adjudications to which the original parties made no objection, would encourage litigation, and disturb the repose beneficial to society." Sec. 322: "The legitimate province of collateral impeachment is void judgments."

Manifestly, plaintiff had no pre-existing right nor was he prejudicially affected when the divorce decree was entered. He could not have attacked it prior to his marriage to defendant. When he married defendant, he relied upon the divorce decree. He may rely upon it now. Can he attack it on the ground alleged?

Decisions in other jurisdictions, each to be considered within the framework of the facts, reach diverse conclusions. Annotations: 120 A.L.R. 815; 140 A.L.R. 914; 12 A.L.R. 2d 717; 17 Am. Jur., Divorce and Separation sec. 485; 27 C.J.S., Divorce sec. 173; and supplements. Also, see 34 Michigan Law Review 959 *et seq.*, "Attack on Decrees of Divorce."

The cases cited below indicate some of the divergent lines of authority:

1. In *Old Colony Trust Co. v. Porter*, 324 Mass. 581, 88 N.E. 2d 135, 12 A.L.R. 2d 706, it was held that strangers to the divorce decree, beneficiaries under a will nullified by the second marriage, if valid, could challenge the decree on jurisdictional grounds (residence) as persons whose interests were *then* adversely affected thereby. Also, see *Smith v. Foto*, 285 Mich. 361, 280 N.W. 790, 120 A.L.R. 801, where a second spouse was permitted to challenge the decree on jurisdictional grounds (residence).

2. *Du Pont v. Du Pont*, 47 Del. 231, 90 A. 2d 468, applying the Texas law, reviewed the Texas decisions and concluded that thereunder a judgment is absolutely void and subject to collateral attack only when the court entering the judgment lacked jurisdiction over the subject matter or parties and *that lack of jurisdiction appears upon the face of the record.* Thus, under Texas Law, in this annulment suit, it was held that the spouse had no right to attack a Texas judgment on the ground that perjured testimony relating to the cause for divorce was the basis for the divorce decree.

3. In *Thomas v. Lambert*, 187 Ga. 616, 1 S.E. 2d 443, it was held generally that a domestic divorce decree cannot be collaterally attacked as void unless its invalidity appears on the face of the record.

4. In *Shammas v. Shammas, supra*, it was held that a divorce decree based on perjured testimony relating to the cause for divorce was voidable, not void; and the legal representatives of the deceased wife, who had married a divorced man, were denied the right to attack on the

ground of alleged perjured testimony the divorce he had obtained from his first wife.

It should be noted that most, if not all, of the cases where collateral attack by a second spouse, or his legal representatives, has been allowed in other jurisdictions, the attack has been on the jurisdiction of the court, specifically that plaintiff was not domiciled in the state of the divorce forum or had failed to reside there for the requisite time to confer jurisdiction upon the courts of that state. Collateral attack is denied in most, if not all, of the cases wherein perjured testimony relating to the ground for divorce has been the basis of attack.

In the *Shammas case,* the reasons for decision given by *Justice Brennan* are, in part, as follows:

"On August 26, 1948 she (the deceased second wife) married Shammas, when, if the divorce decree was valid, she assumed the marital status with him. As the result of this status she had no interest adverse to Mary Shammas (the first wife), the respondent in the divorce suit, and certainly none adverse to Shammas. This status, which it must be assumed Mary Koodray Shammas (the deceased second wife) then desired to exist and acted upon, could only be maintained if the divorce decree was supported. She thus had no interest at the time prejudiced by the decree and the law therefore gave her no standing to make a direct attack upon the decree in her lifetime, and this apart from the effect of her pre-marital knowledge, disclosed in the evidence, of the allegations that Shammas had contracted a bigamous marriage with Bahia Deeb. As she was without standing to make a direct attack, it necessarily follows that her administrators have none. . . .

". . . It is insufficient answer to say that by letting the decree stand the court gives the appearance of sanctioning an alleged fraud. When the instant petition was filed ample time remained to initiate a criminal prosecution of Charles Shammas for perjury. In the circumstances presented it was a mistaken exercise of discretion to set aside this decree and in effect to render a judicial determination that Mary Koodray Shammas lived in a manifest state of adultery with Charles Shammas, with the additional possible consequence of irregularizing the status of the present husband, if any, of Mary Shammas. These are consequences more deleterious to decency, good morals and the welfare of society than the lesser evil of letting the judgment rest."

Accepting the challenged allegations as true, we reach these conclusions: (1) that the divorce decree at most is voidable, not void; (2) that, being immune from attack by either party to the divorce decree, plaintiff may rely upon it now without jeopardy to his marital status; and (3) that plaintiff will not be heard now to attack it on the ground of alleged perjury relating to *the cause for divorce.*

Admittedly, plaintiff knew of defendant's marriage to Shaver. Defendant told him of this marriage and of her divorce; and plaintiff relied, so he alleges, not only upon her statement but upon the divorce decree. Continuing to rely thereon, they lived together until 6 March, 1953, when, so he alleges, she abandoned him. His investigations began *after* they became estranged. Then he was informed and believes, so he alleges, that the divorce decree was obtained on false allegations and evidence as to two years separation. It is noted that when this action was commenced, plaintiff could have obtained an absolute divorce from defendant on the ground of two years separation, *unless* in fact such separation was caused by his own wrongful conduct and not by her wrongful abandonment of him. If plaintiff can prevail in this action, he can eliminate the question as to the cause of separation between plaintiff and defendant. One thing is plain. Their separation was not caused by the presently alleged invalidity of her divorce decree.

If plaintiff, after living with the defendant as man and wife for nearly six years, can now raise and litigate the issue as to two years separation of defendant and Shaver next preceding 10 May, 1946, the alleged cause for divorce, it would be equally possible for him to do so were the alleged cause for divorce adultery, impotence, or any other of the causes for divorce prescribed by G.S. 50-5. If so, notwithstanding the subsistence of a relationship as husband and wife for many years, a divorced person who remarries would need to have the witnesses stand by to guard against a possible future attack relating to the cause for divorce initiated by his or her then (actual) spouse *in case they became estranged.* Such a state of affairs would be intolerable.

When, in such case, a second spouse can rely upon the divorce decree, we think the sounder view is to require him to do so rather than permit him to attack it at his election, depending on the fortunes or misfortunes of the marriage. We must be mindful of his status where he chooses to maintain the validity of the divorce decree rather than to attack it. It would seem that if this plaintiff has a just grievance, such arises, not on account of the divorce decree and his marriage, but on account of matters arising during the subsistence of such marriage.

As stated above, defendant's motion, as related to paragraphs 6 and 8, was properly denied, and the court's ruling in relation thereto is affirmed; but the court should have allowed defendant's motion to strike all of paragraphs 4, 5 and 7, and as to these paragraphs, the court's ruling in relation thereto is reversed. It is ordered that the costs on this appeal be paid, one-half by plaintiff and one-half by defendant.

Affirmed in part.

Reversed in part.

CARPENTER v. CARPENTER.

PARKER, J., dissenting:   This is a civil action to annul and to have adjudged void *ab initio* a purported marriage between the plaintiff and the defendant on the alleged ground that the defendant had a living husband by a preceding marriage at the time the ceremony of marriage between the plaintiff and the defendant was celebrated, heard upon a motion to strike part of the complaint.

G.S. 51-3 provides: "All marriages . . . between persons either of whom has a husband or wife living at the time of such marriage . . . shall be void." G.S. 50-4 is codified under Chapter 50, Divorce and Alimony, of the General Statutes, and is entitled "WHAT MARRIAGES MAY BE DECLARED VOID ON APPLICATION OF EITHER PARTY," and reads: "The Superior Court in term time, on application made as by law provided, by either party to a marriage contracted contrary to the prohibitions contained in the Chapter entitled Marriage, or declared void by said Chapter, may declare such marriage void from the beginning, subject, nevertheless, to the second proviso contained in Section 51-3." This proviso has no application to bigamous marriages.

To obtain relief from the obligations of a marriage, which he contends is bigamous, the plaintiff attacks the divorce decree rendered in the case of *Shaver v. Shaver*.   If plaintiff cannot maintain this action, he may be, and probably will be, required to pay alimony to the defendant who has contracted a bigamous marriage with him, and his person, earnings and property may be subject to the pains and penalties of an alimony decree without due process of law.

According to the allegations of the complaint asked to be stricken, the defendant obtained in the Superior Court of Durham County for the cause set forth in G.S. 50-6 a decree of absolute divorce from her former husband, Floyd N. Shaver, on the ground that she and Floyd N. Shaver had lived separate and apart for two years, when in fact she and Floyd N. Shaver during the said two-year period had lived together as man and wife almost continuously.   The complaint further alleges that Floyd N. Shaver filed an answer in her divorce action against him admitting the truth of the allegations of her complaint that they had lived separate and apart for two years, and that her divorce from Floyd N. Shaver is void and "is the result of a misrepresentation and fraud upon the Superior Court of Durham County and should be set aside and declared null and void."   Carpenter's complaint further alleges "that the purported marriage between him and the defendant is void *ab initio* for that at the time of the said purported marriage ceremony between this plaintiff and defendant, the defendant was then married to Floyd N. Shaver, and that said bonds of matrimony between her and Floyd N. Shaver had not been dissolved by death, valid divorce or otherwise."

The record in the instant case does not state whether or not Mrs. Shaver filed an affidavit with her divorce complaint in *Shaver v. Shaver*, as required by G.S. 50-8. On the date that the instant case was argued before us, there was argued the case of Mary K. Shaver (the defendant here) *v.* Floyd N. Shaver. The same counsel appeared in that case as appeared in the instant case. The opinion in *Shaver v. Shaver* is handed down contemporaneously with the opinion in *Carpenter v. Carpenter*. The instant case and *Shaver v. Shaver* involved the validity of the same divorce decree. In the record in *Shaver v. Shaver* this is the affidavit that Mary K. Shaver (the defendant here) filed with her complaint, which is the identical complaint set forth in the instant case and which affidavit reads as follows:

"NORTH CAROLINA
DURHAM COUNTY

MARY K. SHAVER, being duly sworn, deposes and says: That she is the plaintiff in the above entitled action; that she has read the foregoing complaint and that the same is true of her own knowledge, save and except those matters and things therein stated upon information and belief, and as to those she believes it to be true; that the said complaint is not made out of levity or by collusion between husband and wife, and not for the mere purpose of being freed and separate from each other, but in sincerity and truth, and for the causes mentioned in the complaint; that the facts set forth in the complaint as grounds for plaintiff's divorce have existed to her own knowledge for at least two years prior to the filing of this complaint; that this plaintiff has been resident of the State of North Carolina for a period of more than six months next preceding the filing of this action.

MARY K. SHAVER.

Subscribed and sworn to before me this 9th day of May 1946.

CARRIE B. STRAUGHN
Notary Public      (SEAL)

My commission expires: May 6, 1948."

In my opinion, the court should take judicial notice of its own records in respect to this affidavit filed with her complaint in that inter-related proceeding, particularly where the issues are the same, or are practically the same, and the inter-related case is specifically referred to in the instant case. *U. S. v. Pink*, 315 U.S. 203, 216, 86 L. Ed. 796, 810; *Dimmick v. Tompkins*, 194 U.S. 540, 48 L. Ed. 1110; *Bienville Water Supply Co. v. Mobile*, 186 U.S. 212, 46 L. Ed. 1132; *Freshman v. Atkins*, 269 U.S. 121, 124, 70 L. Ed. 193, 195; *West v. L. Bromm Baking Co.*, 166 Va. 530, 186 S.E. 291; 31 C.J.S., Evidence, pp. 625-626. If judicial

notice is taken of this affidavit, and if Mrs. Shaver did file an affidavit with her complaint, it was, according to the allegations of Carpenter's complaint, a false affidavit knowingly made, and the court had no jurisdiction to grant her a decree of divorce. *Young v. Young,* 225 N.C. 340, 34 S.E. 2d 154. If judicial notice is not taken of this affidavit, and if Mrs. Shaver filed no affidavit with her complaint, it was equally fatal, and the court had no jurisdiction to grant her a decree of divorce. *Woodruff v. Woodruff,* 215 N.C. 685, 3 S.E. 2d 5. This affidavit affirmatively appears on the face of the record in the divorce action of *Shaver v. Shaver,* which the plaintiff is assailing in the instant action.

Causes for absolute divorce are statutory in North Carolina. G.S. 50-5 and G.S. 50-6; *Ellis v. Ellis,* 190 N.C. 418, 130 S.E. 7.

If the allegations of Carpenter's complaint asked to be stricken are true, did the Superior Court of Durham County have jurisdiction to try the action of *Shaver v. Shaver,* and grant Mrs. Shaver, the defendant here, a decree of absolute divorce?

This Court said through *Winborne, J.,* in *Henderson v. Henderson,* 232 N.C. 1, 59 S.E. 2d 227: "Under this statute (G.S. 50-6), in order to maintain an action for divorce, the husband and wife shall have (1) lived separate and apart for two years; and (2) the plaintiff, husband or wife, shall have resided in the State of North Carolina for a period of one year. These two requirements are jurisdictional. *Oliver v. Oliver,* 219 N.C. 299, 13 S.E. 2d 549; *Young v. Young,* 225 N.C. 340, 34 S.E. 2d 154; *Sears v. Sears,* 92 F. 2d 530. If either one or the other of these elements were not existent, the court would not have jurisdiction to try the action, and to grant a divorce. And if the court has no jurisdiction over the subject matter of the action, the judgment in the action is void. A void judgment is one which has a mere semblance, but is lacking in some of the essential elements which would authorize the court to proceed to judgment. *Harrell v. Welstead,* 206 N.C. 817, 175 S.E. 283; *Monroe v. Niven,* 221 N.C. 362, 20 S.E. 2d 311."

*Barnhill, J.,* (now *C. J.*) said for the Court in *Woodruff v. Woodruff, supra:* "It is well established in this Court that the affidavit the statute (G.S. 50-8) requires in connection with a complaint for divorce is jurisdictional. *Holloman v. Holloman,* 127 N.C. 15, 37 S.E. 68; *Nichols v. Nichols,* 128 N.C. 108, 38 S.E. 296. A complaint in a divorce action accompanied by a false statutory affidavit, knowingly made, is as fatal as a complaint without the affidavit."

In *Young v. Young, supra, Devin, J.,* speaking for the Court said: "In an action for divorce the affidavit required by the Statute in connection with the complaint is jurisdictional, G.S., 50-8, and a complaint accompanied by a false statutory affidavit, if it be properly so found, would be regarded as insufficient to empower the court to grant a decree of divorce; and the correct procedure for relief against the judgment is

by motion in the cause." In speaking of a motion in the cause as the correct procedure, the opinion has reference to a motion made by a party to the divorce decree, and not to a stranger to it.

We have consistently held that in an action for divorce under our statutes the affidavit required to be filed with the complaint by G.S. 50-8 is jurisdictional, and a complaint accompanied by a false statutory affidavit whereby a fraud and imposition is practiced upon the court and jurisdiction is apparently acquired, when jurisdiction is in fact lacking, and the court was procured by such fraud and imposition practiced upon it to exercise jurisdiction, which it would not have exercised, and had no authority to exercise, if the true facts had been disclosed, is regarded as insufficient to give the court jurisdiction to render a valid decree of divorce. A decree of divorce entered under such circumstance is void. *Holloman v. Holloman,* 127 N.C. 15, 37 S.E. 68; *Nichols v. Nichols,* 128 N.C. 108, 38 S.E. 296; *Martin v. Martin,* 130 N.C. 27, 40 S.E. 822; *Hopkins v. Hopkins,* 132 N.C. 22, 43 S.E. 508; *Johnson v. Johnson,* 142 N.C. 462, 55 S.E. 341; *Grant v. Grant,* 159 N.C. 528, 75 S.E. 734; *Woodruff v. Woodruff, supra; Young v. Young, supra.*

Mrs. Shaver's affidavit attached to her complaint is a vital part of the record in that case. Carpenter's complaint here alleges that in the divorce case of *Shaver v. Shaver,* the defendant Floyd N. Shaver filed an answer admitting all the allegations of his wife's complaint to be true. According to the allegations of Carpenter's complaint, Mrs. Shaver by false allegations in her complaint, to which she attached a false statutory affidavit, that she and her husband had lived separate and apart for two years prior to the institution of her action, and her husband Floyd N. Shaver by filing a verified answer in the divorce action falsely admitting the allegations of his wife to be true, practiced a fraud and imposition upon the Superior Court of Durham County whereby that Court apparently acquired jurisdiction to hear and determine her divorce action, when in truth and in fact jurisdiction was lacking, and that Court was procured by such fraud and imposition and collusion of her and her husband Floyd N. Shaver to exercise jurisdiction and grant her a divorce, which jurisdiction the Superior Court of Durham County had no authority to exercise, and which it would not have exercised, if the true facts had been disclosed. If Carpenter can prove as true those allegations in his complaint, the divorce decree in *Shaver v. Shaver* rendered by the Superior Court of Durham County is utterly void. Carpenter's attack on the divorce decree is based upon false swearing in the verified pleadings, fraud and collusion, which false swearing, fraud and collusion prevented the Superior Court of Durham County from having jurisdiction over the subject matter of the action of *Shaver v. Shaver.*

CARPENTER *v.* CARPENTER.

This question is presented: Can the plaintiff Carpenter, the second spouse of Mary Kelly Shaver Carpenter, annul his marriage to her in an action instituted for that purpose, if he can prove that the decree of absolute divorce rendered in *Shaver v. Shaver* was void and a nullity, and at the time of the purported marriage between him and Mary Kelly Shaver, she had a living husband, Floyd N. Shaver, from whom she was not validly divorced?

In passing upon that question we must bear in mind the clear distinction in the rules of law as to parties and privies to a judgment and strangers to a judgment. We must also bear in mind the rules of law where the judgment is void by reason of lack of jurisdiction in the court rendering it.

I agree with the statement in the majority opinion that "cases such as *McCoy v. Justice,* 199 N.C. 602, 155 S.E. 452, and *Horne v. Edwards,* 215 N.C. 622, 3 S.E. 2d 1, in which 'extrinsic' fraud and 'intrinsic' fraud are distinguished, relate to the proper procedure in each instance *by a party* to the original action." Those cases have no application here for the reason that Carpenter is a stranger to the action of *Shaver v. Shaver.*

It is elementary that ordinarily only parties and privies are bound by a judgment. *Thomas v. Reavis,* 196 N.C. 254, 145 S.E. 226; *Rabil v. Farris,* 213 N.C. 414, 196 S.E. 321; 30 Am. Jur., Judgments, Sec. 220.

In *Thomas v. Reavis, supra, Stacy, C. J.,* said for the Court: "Judgments are binding on parties and their privies as to all issuable matters contained in the pleadings, but they are not binding on strangers to the proceeding or those who have had no opportunity to be heard."

"It is a well settled general rule that whenever the rights of third persons are affected they may collaterally attack a judgment for fraud committed by one party or for collusion of both parties." 31 Am. Jur., Judgments, Sec. 596, where many cases are cited in support of the text. The rationale of the rule is that the party to the principal case is a stranger to the judgment rendered in the previous action, where he was not directly interested in the subject matter thereof, and had no right to make defense, adduce testimony, cross-examine witnesses, control the proceedings, or appeal from the judgment.

A challenge to jurisdiction may be made at any time. *Baker v. Varser,* 239 N.C. 180, 79 S.E. 2d 757; *Spaugh v. Charlotte,* 239 N.C. 149, 79 S.E. 2d 748; *Anderson v. Atkinson,* 235 N.C. 300, 69 S.E. 2d 603; *Miller v. Roberts,* 212 N.C. 126, 193 S.E. 286; *Johnson v. Finch,* 93 N.C. 205, 208.

It is well established law that a void judgment is no judgment, is a nullity without life or force, no rights can be based thereon, and it can be attacked collaterally by anyone whose rights are adversely affected by it. *Reid v. Bristol,* 241 N.C. 699, 86 S.E. 2d 417; *Casey v. Barker,*

219 N.C. 465, 14 S.E. 2d 429; *Dunn v. Wilson,* 210 N.C. 493, 187 S.E. 802.

A judgment is void when there is a want of jurisdiction by the court over the subject matter of the action. *Clark v. Homes,* 189 N.C. 703, 708, 128 S.E. 20; *Hanson v. Yandle,* 235 N.C. 532, 70 S.E. 2d 565.

In *Monroe v. Niven,* 221 N.C. 362, 20 S.E. 2d 311, *Barnhill, J.,* (now *C. J.*) said for the Court: A void judgment may "be disregarded and treated as a nullity everywhere. It is *coram non judice.*" Further on in the opinion it is said: " 'A nullity is a nullity, and out of nothing nothing comes' . . . 'The passage of time, however great, does not affect the validity of a judgment; it cannot render a void judgment valid.' "

*Stacy, C. J.,* said for the Court in *Harrell v. Welstead,* 206 N.C. 817, 175 S.E. 283: " 'But a void judgment is no judgment, and may always be treated as a nullity.' A nullity is a nullity, and out of nothing nothing comes. *Ex nihilo nihil fit* is one maxim that admits of no exceptions."

In *Stafford v. Gallops,* 123 N.C. 19, 31 S.E. 265, the Court said: "A void judgment is in legal effect no judgment. No rights are acquired or divested by it. It neither binds nor bars anyone, and all proceedings founded upon it are worthless."

In 17 Am. Jur., Divorce and Separation, Sec. 481, it is said: "A judgment or decree of divorce which is void for want of jurisdiction is generally subject to collateral attack, notwithstanding a subsequent marriage or the death of the party by whom the divorce was procured." In 17 Am. Jur., Divorce and Separation, Sec. 484, it is said: "It is generally held and recognized that a stranger may collaterally attack a decree of divorce for want of jurisdiction in the court entering it where his property rights are injuriously affected thereby." See also: *Adams v. Adams,* 154 Mass. 290, 28 N.E. 260, 13 L.R.A. 275.

The majority opinion relies upon *Simmons v. Simmons,* 228 N.C. 233, 45 S.E. 2d 124; *Rodriguez v. Rodriguez,* 224 N.C. 275, 29 S.E. 2d 901; *Guerin v. Guerin,* 208 N.C. 457, 181 S.E. 274; *Harrell v. Welstead, supra; Fowler v. Fowler,* 190 N.C. 536, 130 S.E. 315, to support its statement that Carpenter cannot maintain his action because the lack of jurisdiction does not appear on the face of the record. In all of these cases the motion to set aside the judgments were made by parties to the actions.

However, the going is rough in the majority opinion, when it attempts to get around the cases of *Henderson v. Henderson, supra; Young v. Young, supra,* and *Woodruff v. Woodruff, supra.* In *Young v. Young,* it is held that a party to a divorce decree can obtain relief when there is a false statutory affidavit, which is jurisdictional, by showing the jurisdictional defect by extrinsic evidence. The holding in

*Young v. Young* merely reiterates the law as laid down in *Holloman v. Holloman, supra; Nichols v. Nichols, supra; Martin v. Martin, supra; Hopkins v. Hopkins, supra; Johnson v. Johnson, supra; Grant v. Grant, supra,* and *Woodruff v. Woodruff, supra.* It does not seem to me to be sound law or sound public policy to permit a party to the cause in a divorce action to show by extrinsic proof the falsity of the statutory affidavit, which is jurisdictional, and to deny such permission to an utter stranger to the divorce decree who is in a position like Carpenter.

The case of *Pridgen v. Pridgen,* 203 N.C. 533, 166 S.E. 591, is directly in point as to the right of Carpenter to maintain his action. In the *Pridgen case* the second headnote in our Reports states: "Where a wife attempts to marry again when no valid divorce *a vinculo* had been obtained from her living husband, such second attempted marriage is absolutely void and may be annulled by the husband of the second attempted marriage in an action instituted for that purpose. C.S. 1658, 2495." C.S. 1658 is now G.S. 50-4, and C.S. 2495 is now G.S. 51-3. The Court said: "Between void and voidable marriages the law recognizes a distinction which applies to the status of the parties before the marriage relation is dissolved. A voidable marriage is valid for all civil purposes until annulled by a competent tribunal in a direct proceeding, but a void marriage is a nullity and may be impeached at any time. Schouler's Marriage, etc., sec. 1081; *Johnson v. Kincade,* 37 N.C. 470; *Crump v. Morgan,* 38 N.C. 91; *Williamson v. Williams,* 56 N.C. 446; *Taylor v. White,* 160 N.C. 38. In *Gathings v. Williams,* 27 N.C. 487, the principle is stated in these words: 'where the marriage is between persons, one of whom has no capacity to contract marriage at all, as where there is want of age ("want of age" being obiter, *Koonce v. Wallace,* 52 N.C. 194), or understanding, or a prior marriage still subsisting, the marriage is void absolutely and from the beginning, and may be inquired of in any court. For, although in such case there may be a proceeding in the ecclesiastical court, it is not to dissolve the marriage, but merely, for the convenience of the parties, to find the fact and declare the marriage thereupon to have been void *ab initio,* and no civil rights can be acquired under such a marriage. It is said to be no marriage, but a profanation of marriage, and the *factum* is a nullity.' The General Assembly has provided that all marriages between persons either of whom has a husband or wife living at the time of such marriage shall be void, and that the aggrieved party may seek relief in the Superior Court, which has succeeded to the functions of the ecclesiastical courts of England. C.S. 1658, 2495; *Gathings v. Williams, supra; Johnson v. Kincade, supra; Setzer v. Setzer,* 97 N.C. 252; *Watters v. Watters,* 168 N.C. 411. The plaintiff accordingly brought suit, not for divorce, but to have the marriage relation between the defendant and himself adjudged void from the beginning, on the ground that at the time their

marriage was solemnized the defendant had a husband living. *Taylor v. White, supra.*"

In 120 A.L.R. there is an elaborate comment note beginning on page 815, entitled "Attack on divorce decree by second spouse of party to divorce." In this note are cited a number of cases where the right to attack is sustained, and where the right to attack is denied. Among the cases where the right to attack is sustained, there is cited on page 819 our case of *Pridgen v. Pridgen, supra.*

In 12 A.L.R. 2d there is an annotation captioned "Standing of Strangers to Divorce Proceeding to attack validity of Divorce Decree," beginning on page 717 and ending on page 748. On pages 733-734 of this annotation a list of cases is given where the second spouse has a standing to attack the divorce decree, and here again is cited our case of *Pridgen v. Pridgen, supra.*

In *Williams v. Williams*, 63 Wis. 58, 53 Am. Rep. 253, this is the headnote in the American Reports Series: "J. took R. to wife in 1860, and very soon permanently deserted her. In 1864 J. married the plaintiff. In 1868 J. and the plaintiff separated. In 1870 while living near J. the plaintiff publicly married W. Subsequently the plaintiff got a divorce against J. by default for desertion. *Held*, in this action for dower in the estate of W., (1) that the presumption was against the validity of the marriage of 1864; (2) that the plaintiff was not estopped from showing that that marriage was void." In the opinion the Court said: "The marriage between the plaintiff and Jones being absolutely void *ab initio*, it was good for no legal purpose, and its invalidity may be maintained in any proceeding in any court between any parties, whether in the life-time or after the death of the supposed husband or wife, or both, and whether the question arises directly or collaterally. (Citing authorities.) It is otherwise where the marriage is voidable merely."

In *Old Colony Trust Co. v. Porter*, 324 Mass. 581, 88 N.E. 2d 135, 12 A.L.R. 2d 706, it was held the executor of a will apparently revoked by a subsequent marriage of the testatrix, may, for the purpose of showing the invalidity of such marriage, collaterally attack a divorce decree previously granted the new spouse without jurisdiction. In its opinion the Court said: "The industry of counsel has supplied us with a number of cases from other jurisdictions, apparently representing the weight of authority, which in general support the principle of collateral attack for want of jurisdiction upon decrees of divorce by persons not parties to the divorce proceedings whose rights would be impaired if effect were given to the decrees as against them." The Court then cites a long list of cases in support of its statement, and then gives a shorter list of cases taking a different view.

In *Williams v. North Carolina*, 325 U.S. 226, at page 230, 89 L. Ed. 1577, at page 1582, 157 A.L.R. 1366, at page 1369, the Court said: "It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties. Citing authorities. But those not parties to a litigation ought not to be foreclosed by the interested actions of others . . ."

It is well established law that in criminal prosecutions, such as for bigamy, adultery or fornication, the State has a right to impeach the validity of a foreign decree divorcing the defendant from a former spouse, where such decree is relied upon by the defendant as a matter of defense. *S. v. Williams*, 224 N.C. 183, 29 S.E. 2d 744, affirmed in *Williams v. North Carolina*, 325 U.S. 226, 89 L. Ed. 1577; *S. v. Herron*, 175 N.C. 754, 94 S.E. 698; Anno. 12 A.L.R. 2d, page 734.

A rule "which, in the absence of elements of estoppel chargeable to him personally, denies to a party the right to attack a divorce decree otherwise subject to attack, solely because he is the second spouse of the divorced party contracting the second marriage, places upon him (or her) the obligations of a valid second marriage, without at the same time entitling him (or her) to its benefits, and places the enjoyment by him (or her) of such benefits at the mercy of third persons." Anno. 120 A.L.R., page 817.

The plaintiff Carpenter was in no sense a party to the divorce proceeding in *Shaver v. Shaver* so as to become bound thereby, or in privity with the parties to that divorce action. According to Carpenter's complaint he did not meet Mrs. Shaver until the year after her divorce decree from Floyd N. Shaver. Carpenter could not participate in the trial of the divorce action of *Shaver v. Shaver*, and he could not have appealed from it: he was a stranger to it. He took no part in the divorce case. He was in no way concerned in the result of it at the time, and would never have become concerned, if he had not afterwards married Mrs. Shaver. Carpenter's interests are materially affected. If the allegations of his complaint asked to be stricken are true and he cannot have his day in court to prove them, he is put under obligation to support a woman who is not in law his wife, and who had no capacity to contract a marriage with him. He may be required to pay alimony and maintenance to one who has a prior living husband legally undivorced. A decree of divorce rendered by a court without jurisdiction is void, and ought not to be recognized or enforced, and especially where the court is led to exercise jurisdiction by perjury and fraud of one of the parties. A court should be vigilant to see that the forms of judicial sanctity are not used as a cloak for fraud and injustice. We have held this day that Carpenter cannot attack the validity of the divorce decree

in *Shaver v. Shaver* by a motion in the cause. *Shaver v. Shaver, post,* 309, 93 S.E. 2d 614. If the allegations of Carpenter's complaint are true, and if he cannot assail the divorce decree in *Shaver v. Shaver,* by an independent action, Mrs. Shaver, who is the legal wife of Floyd N. Shaver, may compel him to support her, and may compel him to pay her alimony, and a formal decree of absolute divorce by the Durham County Superior Court will be the means which will enable her to perpetrate such an injustice. A court cannot be converted into a shield to protect fraud. The subject matter of this suit is the validity of the purported marriage between Carpenter and the defendant. If Carpenter cannot assail in any way in our Courts this void judgment materially affecting his rights, there will be a denial of his constitutional right of due process of law. In *Galpin v. Page,* 18 Wall. 350, 368, 369, 21 L. Ed. 959, 963, *Mr. Justice Field* said for the Court: "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination."

The gist of plaintiff's action to annul his purported marriage to Mrs. Shaver is based upon the fraud and perjury perpetrated by the defendant on the Superior Court of Durham County in procuring it to exercise jurisdiction in the divorce action of *Shaver v. Shaver,* which it would not have exercised, and had no jurisdiction to exercise, if the true facts had been disclosed. In my opinion, the very carefully reasoned opinion in *Pridgen v. Pridgen, supra,* is right in holding that a second spouse may annul in an action instituted for that purpose his purported marriage with a wife on the ground that the divorce decree obtained by his wife purporting to dissolve her former marriage was void and a nullity, no elements of estoppel chargeable to Pridgen personally appearing. And no elements of estoppel chargeable to Carpenter personally appearing in the instant case I think that the Court should follow the *Pridgen Case* here. We are not confronted by the question of a second spouse, by his own acts, taking an active part in the divorce proceeding. If a second spouse should be held to be estopped on that ground to impeach the validity of the decree, it is not authority for a general proposition that a second spouse, who was a complete stranger to the divorce decree, has no standing to challenge its validity. The complaint states a cause of action, which the plaintiff has a right to maintain. The allegations of his complaint asked to be stricken are relevant and material.

I cannot agree with the conclusions reached in the majority opinion that, accepting the challenged allegations of Carpenter's complaint as true, the divorce decree in *Shaver v. Shaver* at most is voidable, and not void, and that Carpenter will not be heard to attack the divorce decree.

---

Carpenter alleges in his complaint that he learned that Mary K. Shaver was not legally divorced from her husband, Floyd Shaver, after she abandoned him, Carpenter. "The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it . . . A person may not predicate an estoppel in his favor on, or assert such estoppel for the purpose of making effective, obtaining the benefit of, or shielding himself from the results of, his own fraud, violation of law, wrongful act, or other inequitable conduct in the transaction in question . . ." 31 C.J.S., Estoppel, Sec. 75. If the allegations of Carpenter's complaint are true, Mrs. Shaver cannot by estoppel preclude Carpenter from assailing her divorce decree procured by her perjury and fraud. If Carpenter were permitted his day in court and proved the allegations of his complaint, the unfortunate situation in which Mrs. Shaver would find herself would be of her own making. At the time of her divorce decree Carpenter did not know her. If the challenged allegations of Carpenter's complaint are true, Mrs. Shaver did a wrong to Carpenter when she married him for the reason that she was still married to Floyd N. Shaver. Certainly, if Mrs. Shaver seeks to recover alimony from Carpenter, due process and the law of the land require that Carpenter some day, somewhere, must have an opportunity in court to be heard on his allegations that Mrs. Shaver contracted a bigamous marriage with him. "The words of Webster, so often quoted, that 'by the law of the land' is intended 'a law which hears before it condemns,' have been repeated in varying forms of expression in a multitude of decisions." *Powell v. Alabama,* 287 N.S. 45, 77 L. Ed. 158, 84 A.L.R. 527.

In writing this dissenting opinion I have assumed that the allegations in the complaint asked to be stricken are true. If the plaintiff could have a trial, he might fail completely to prove these allegations. But, whether he can or not, in my opinion, he has a right to have his day in court before a judge and jury.

I vote to affirm the ruling of the lower court.

BARNHILL, C. J., concurs in this dissent.