Betty Jo MANNING, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

W. B. STONE, Administrator of the Estate of Howard Wilson Anderson, Jr., Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Darlene DAVIS, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civ. Nos. 2193, 2197, 2192.

United States District Court
W. D. North Carolina,
Asheville Division.
Oct. 26, 1964.

**616**

Robert R. Williams, Jr., Asheville, N. C., for plaintiff Manning.

Robert R. Williams, Jr., Asheville, N. C., and Richard B. Stone, Black Mountain, N. C., for plaintiff. Stone.

William J. Cocke, Asheville, N. C., for plaintiff Davis.

William B. Webb, Charlotte, N. C., for defendant.

CRAVEN, Chief Judge:

These are three lawsuits brought to enforce against State Farm Mutual Automobile Insurance Company three judgments obtained in the Superior Court of North Carolina against Harley W. Meredith, Sr., an alleged "insured" of State Farm. Coverage is denied by State Farm.

## MOTION TO PRODUCE UNDER RULE 34

In sixteen separate paragraphs the plaintiff Betty Jo Manning has moved, pursuant to Rule 34, for an order requiring State Farm to produce for inspection and copying numerous insurance records, reports, memoranda of investigation, statements of witnesses, and various additional correspondence. State Farm, without conceding that plaintiff has made a proper showing of good cause with respect to many of the documents requested, has consented to produce all of the materials sought except for the letters described in paragraphs 14, 15, and 16 of the motion for production. Production of these letters is resisted.

What is sought under these paragraphs of the motion (14, 15, 16) is nothing less than the correspondence between State Farm and its Asheville, North

Carolina, attorney, who regularly handles its business in the Asheville area, with regard to the collision and the underlying lawsuits involved in these cases. Ordinarily, communications between counsel and his client concerning possible liability are privileged under Rule 34. ( Barron & Holtzoff, Federal Practice and Procedure, Section 798, and cases cited in footnote 96.1. ] Aside from the bar of strict privilege, there has been no strong and substantial showing that the correspondence between State Farm and its lawyer contains information not otherwise accessible which is relevant to the issues and without which the plaintiff will be unfairly handicapped in presenting her claim or in meeting State Farm's affirmative defense of fraud and collusion.

Plaintiff contends that the correspondence will "disclose a waiver and estoppel and will disclose admissions of the Defendant of their obligations * * * through the Meredith coverage." It `is difficult to imagine estoppel arising out of confidential communications between client and lawyer. This sort of estoppel would encourage a client to deceive his own lawyer. The "work product" of a lawyer is protected, not because of strict privilege, but because to do otherwise would interfere seriously with the vital function performed by counsel. Disclosure of correspondence between lawyer and client pertaining to insurance coverage and possible liability would interfere no less seriously. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451 (1947).

The motion as it relates to the documents described in paragraphs 14, 15, and 16 will be. denied. ·

### OBJECTIONS TO INTERROGATORIES OF STATE FARM

 Each of the plaintiffs strenuously objects to State Farm's interrogatories dated June 26, 1964. The questions are substantially similar in all three cases and relate to the nature of the alleged trials resulting in judgments entered in favor of plaintiffs and against Harley Meredith, Sr. in the `Superior Court of Buncombe County.

The pleadings establish that Meredith had been issued an automobile liability policy by State Farm, that he requested State Farm to defend the lawsuits and it declined to do so—denying coverage and denying any obligation to defend.

If there is coverage and a duty to defend, the breach of that duty would ordinarily result in State Farm becoming bound to discharge the judgments obtained against its assured. Such judgments are ordinarily conclusive against the insurer as to negligence, agency, and damages. Squires v. Textile Insurance Co., 250 N.C. 580, 108 S.E.2d 908 (1959); Nixon v. Liberty Mutual Insurance Co., 255 N.C. 106, 120 S.E.2d 430 (1961).

State Farm cannot impeach the underlying judgments of the superior court *except* for fraud or collusion between plaintiffs and its assured. 46 C.J.S. Insurance § 1251.

But as of September 1, 1964, State Farm has amended its Answer to allege in substance that the purported trials were not, in fact, adversary proceedings, but were fictitious proceedings to procure fraudulent and collusive judgments.

"Inquiry into the circumstances under which a judgment was obtained is not necessarily a collateral attack" on the judgment. 49 C.J.S. Judgments § 408b. But if it be so considered, State Farm is allegedly a stranger to the three judgments entered in the superior court. It was not a party, nor was it apparently privy to the obtaining of the judgments against its assured. It contends its interests were not legally represented at the purported trial. See: Queen City Coach Co. v. Burrell, 241 N. C. 432, 85 S.E.2d 688 at 691 (1955); cf. Bosse v. Wolverine Insurance Co., 88 N. H. 440, 190 A. 715.

It is questionable whether North Carolina procedure would permit State Farm to *directly* attack the judgments by motion in the cause. See: Shaver v. Shaver, 244 N.C. 309, 93 S.E.2d 614 at 615 (1956). Yet, the North Carolina Su-

preme Court has said that judgments of any court can be impeached by strangers to them for fraud or collusion. Carpenter v. Carpenter, 244 N.C. 286, 93 S.E.2d 617 at 626 (1956). 49 C.J.S. Judgments § 414.

Whether State Farm may proceed directly or collaterally is of no consequence—except procedurally. North Carolina law permits the attack on grounds of fraud or collusion. Therefore, the result in the federal court will be, as it ought to be, the same as it would be if the litigation had remained in the state court. No less faith and credit will be accorded the underlying judgments than would be accorded in the state courts.

In view of the allegations of fraud and collusion in the entry of the underlying judgments, State Farm may collaterally attempt to impeach them. Whether it will be successful depends on what type of fraud, if any, can be shown. In making the attempt, State Farm is entitled to have its interrogatories of June 26, 1964, answered.